Ivan W. Martin, Appellant *v.* Township of Millcreek, Appellee.

Argued February 8, 1980, before Judges WILKINSON, JR., MENCER and CRAIG, sitting as a panel of three.

*David J. Brightbill*, of *Siegrist, Koller & Brightbill*, for appellant.

*Robert C. Rowe*, for appellee.

OPINION BY JUDGE CRAIG, March 28, 1980:

The issue in this case is the validity of a ten acre minimum one-family lot size established by the Millcreek Township Zoning Ordinance provisions applicable to an E-1 ''Ecogically Sensitive District'', covering one-third of the area of that semi-rural township, which elsewhere requires a one-acre minimum lot area per family.

This zoning appeal is from a decision of the Common Pleas Court of Lebanon County which upheld

the refusal of the Millcreek Township Board of Supervisors (township) to adopt a curative amendment by which landowner Ivan W. Martin (owner) had attacked the ten-acre minimum under Section 1004 of the Pennsylvania Municipalities Planning Code (MPC) Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11004. The owner seeks to subdivide his 160-acre tract by selling off 1.34 acres for residential use.

As summarized by the court below, the owner's constitutional attack upon the ten acre minimum has three facets: (1) The provision does not bear a substantial relationship to police power purposes, (2) it is exclusionary, and (3) it is unreasonable, arbitrary and confiscatory.

The curative amendment proceedings concluded with the township's refusal to adopt the curative amendment or any other revision. On appeal to the court, the parties presented evidence de novo.

As to the ten-acre minimum, the owner's evidence included expert real estate opinion that 70 percent of residence buyers could not afford that much land as a base for a dwelling. The township's specific evidence consisted of a letter written by an employee of the Pennsylvania Department of Environment Resources, noting that the E-1 area has a groundwater problem.

Because the attack here is multi-pronged, a preliminary review of our minimum area requirement cases can illuminate the importance of identifying the different constitutional issues which have been raised in cases of this kind.

Our Supreme Court recited the several fundamental inquiries at the beginning of Justice Nix's opinion in *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977), by stating:

In reviewing zoning ordinances, this Court has stated that an ordinance must bear a substantial relationship to the health, safety, morals, or general welfare of the community. National Land and Investment Co. v. Easttown Twp. Bd. of Adjustment, 419 Pa. 504, 522, 215 A.2d 597, 607 (1965), citing, inter alia, Glorioso Appeal, 413 Pa. 194, 196 A.2d 668 (1964). Thus, without expressly labelling it as such, this Court has employed a substantive due process analysis in reviewing zoning schemes and has concluded implicitly that exclusionary or unduly restrictive zoning techniques do not have the requisite substantial relationship to the public welfare. See Concord Twp. Appeal, 439 Pa. 466, 268 A.2d 765 (1970); Girsh Appeal, [437 Pa. 237, 263 A.2d 395 (1970)]

*Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 188, 382 A.2d 105, 108 (1978).

Thus, under the overarching substantive due process concept—the principle that there is an unconstitutional deprivation of property if regulatory impact is not reasonably related to legitimate public interest—zoning requirements can, alternatively, be invalid because *exclusionary* or because *unduly restrictive;* that is, a zoning limitation may be improper because its effect is to exclude people (such as low and moderate income groups) entirely from the municipality, or because the severity of its restrictive impact on the owner of the regulated property is unjustified for police power purposes—or both infirmities may be present.

Zoning prohibitions of multi-family dwellings have figured more prominently when the specific issue is exclusion. *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970); *Surrick, supra; Waynesborough Corporation*

*v. Easttown Township Zoning Hearing Board,* 23 Pa. Commonwealth Ct. 137, 350 A.2d 895 (1976). Minimum lot area requirements have been scrutinized more prominently with respect to being unduly restrictive or confiscatory. *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958); *National Land v. Easttown Tp. Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965); *Concord Township Appeal,* 439 Pa. 466, 268 A.2d 765 (1970).

However, just as a multi-family dwelling prohibition can also be confiscatory as applied to a particular location, minimum lot area requirements have also been related to the problem of exclusion. In *Bilbar, supra,* although the Supreme Court's concern was focused primarily upon the restrictive impact of a one-acre minimum (which was upheld) Chief Justice JONES added a dictum:

> And, of course, minimum lot areas may not be ordained so large as to be exclusionary in effect and, thereby, serve a private rather than the public interest.

393 Pa. at 76, 141 A.2d at 858.

In invalidating a four-acre minimum in *National Land,* while finding that the "deprivation of value" outweighed the public benefit, the Supreme Court also referred to "the interesting issue" of a municipality's responsibility to other people and condemned any "zoning ordinance whose primary purpose is to prevent the entrance of newcomers." 419 Pa. at 532, 215 A.2d at 612. In *Concord Appeal, supra,* two and three-acre lot area minimums were condemned as being unreasonably restrictive and also as exclusionary.

Our own court, in *Hess v. Upper Oxford Township,* 17 Pa. Commonwealth Ct. 399, 332 A.2d 836 (1975), remanded the case for proper findings to a lower court which had determined that the two-acre

minimum was not "exclusionary." In *DeCaro v. Washington Township,* 21 Pa. Commonwealth Ct. 252, 344 A.2d 725 (1975), where we declined to invalidate a three-acre minimum lot size, the focus of our majority opinon was upon the absence of a showing of exclusionary effect (because of the low percentage of the township area involved), an emphasis pointed up by the fact that concern about the magnitude of the restriction was left to the dissenting opinion. Similarly, in *In Re: Appeal of B-K Properties,* 45 Pa. Commonwealth Ct. 642, 405 A.2d 1083 (1979) our majority opinion affirmed on the opinion of the court below, which had approved a five-acre lot area minimum from the standpoint that the only issue raised was exclusionary effect.

In the present case, the landowner did not confine the attack to the specific issue of exclusion alone. As recognized by the court below, the issues spelled out in the curative amendment challenge, and preserved in the appeal to court, included: (1) lack of "a substantial relationship to the police power," (2) "an exclusionary purpose or result," and (3) regulations claimed to be "unreasonable, arbitrary and confiscatory." Therefore, in accordance with the analysis of *Surrick, supra,* in considering the substantive due process questions, we will examine in turn the separate issues of exclusion and confiscatory restriction.

### Exclusionary Effect

We agree with the court below that the owner has not made a record sufficient to show that the ten-acre lot area minimum has the effect of necessarily excluding any portion of the population entirely from the township. Indeed, because the ten-acre minimum covers only about one-third of the township's area, and the remaining residential districts are subject to a one-acre lot area minimum, which has not been

challenged, we cannot perceive an exclusionary effect without evidence beyond that presented.

Moreover, on these facts, the burden of overcoming the ordinance's presumption of validity remained upon the challenger because there was no total prohibition of a lawful use from the whole area of the municipality, *See Beaver Gasoline Co. v. Osborne Borough,* 445 Pa. 571, 285 A.2d 501 (1971). Nor was there any proof of a failure of the township to provide for acceptance of a "fair share" of any class of housing, *Township of Willistown v. Chesterdale Farms, Inc.,* 462 Pa. 445, 341 A.2d 466 (1975); *Surrick, supra.* Nor was there evidence sufficient to suggest exclusion in effect. *See Cutler v. Newtown Township Zoning Hearing Board,* 27 Pa. Commonwealth Ct. 430, 436, 367 A.2d 772, 777 (1976). This zoning ordinance is not exclusionary on its face, and the owner did not sustain his burden of showing exclusion in fact. *Russell v. Penn Township Planning Commission,* 22 Pa. Commonwealth Ct. 198, 348 A.2d 499 (1975); *Kaiserman v. Springfield Township,* 22 Pa. Commonwealth Ct. 287, 348 A.2d 467 (1975); *Sullivan v. Lower Makefield Township Board of Supervisors,* 22 Pa. Commonwealth Ct. 318, 348 A.2d 464 (1975).

### Unduly Restrictive or Confiscatory Impact

As to the issue of reasonableness in terms of police power purposes, we begin with the position of the Supreme Court, in *National Land,* that "it is impossible for us to say that any minimum acreage requirement is unconstitutional per se." 419 Pa. at 523, 215 A.2d at 608. However, we are faced, for the first time, with a question of the validity of a ten-acre minimum, more than three times as great as the three-acre minimum we upheld in *DeCaro* on the basis of its non-exclusionary effect. The *National Land* opinion noted the problem of degree by stating:

[a]t some point along the spectrum, however, the size of lots ceases to be a concern requiring public regulation and becomes simply a matter of private preference. The point at which legitimate public interest ceases is not a constant one, but one which varies with the land involved and the circumstances of each case.

419 Pa. at 524, 215 A.2d at 608

In *Concord Township Appeal,* the majority opinion, also noting that minimum lot sizes are not inherently unreasonable and that planning considerations can justify "reasonably varying minimum lot sizes in given areas of the community," also grappled with the question of degree:

The two and three acre minimums imposed in this case are no more reasonable than the four acre requirements struck down in National Land. . . . [M]inimum lot sizes of the magnitude required by this ordinance are a great deal larger than what should be considered as a *necessary* size for the building of a house, and are therefore not the proper subjects of public regulation. As a matter of fact, a house can fit quite comfortably on a one-acre lot without being the least bit cramped. Absent some extraordinary justification, a zoning ordinance with minimum lot sizes such as those in this case is completely unreasonable. (Emphasis in original; footnote omitted.)

439 Pa. at 470-71, 268 A.2d at 766-67.

Thus, granting that the burden of establishing the unconstitutionality of legislation is always upon the attacker, we cannot avoid the clear and understandable view of the Supreme Court that, an extraordinary justification related to the public interest is needed to balance the regulatory impact of two-and-

three-acre lot area minimums and therefore is certainly needed to balance the greater impact of the ten-acre lot area minimum presented in this case.

Here, the township relies almost entirely upon the presumption of validity, along with the idea that the ten-acre minimum protects the watershed against pollution by on-site septic systems. The court below, after leaving the exclusion issue, characterized the township's own evidence on pollution and sewage—the letter from an employee of the Pennsylvania Department of Environmental Resources—as having a "seeming speculative nature." The characterization is apt; the only conclusion in the letter is:

> The inability to secure medium to large supplies of ground water may limit the use of this land.

In *Concord Township Appeal,* the Supreme Court stated that the "argument that three-acre minimum zoning is necessary for adequate on-site sewerage is patently ridiculous." 439 Pa. at 476, 268 A.2d at 769. We can only echo that view with respect to a minimum which is 333 percent greater.

In *National Land,* the four-acre minimum was held to be "neither a necessary nor a reasonable method" by which a township "can protect itself from the menace of pollution." 419 Pa. at 526, 215 A.2d at 609.

The lower court here also turned to the township comprehensive plan, which was "submitted with the record," as a "fertile area for inspection." From the comprehensive plan, the court derived conclusions as to the rural nature of the township, the stability of its population, its low growth rate, the availability of development space, and the fact that one-third to one-half of the township is subject only to a one-acre lot area minimum. Those factors, of course, are germane to the issue of exclusionary effect which, as we have held above, is not a problem. We are pre-

sented with nothing, however, to relate to legitimate zoning purposes the deprivation of value involved in a limitation which permits only one dwelling on a ten-acre parcel.

Absent the watershed protection justification pertinent to the public health and general welfare, we cannot find anything which would suggest, alternatively, that a ten-acre minimum should be upheld because it is relevant to the protection of the public safety or morals.

The burden upon the attacker is more easily met when the one-family minimum area is, as here, obviously so much greater than that which is required for any conceivable police power purpose. As the owner's evidence in this case pointed out, to require ten acres for each residence will mean that—given any stated number of homes to be built—much more farmland will be cut up and taken out of production in rural areas such as this district.

To express a reasonable paraphrase of *Concord Township Appeal,* as quoted above, we must conclude that the ten-acre minimum imposed in this case is no more reasonable than the four acre requirements struck down in *National Land* or the two and three acre minimums in *Concord Township Appeal* itself.

Therefore, because a ten-acre minimum area, for one family, clearly overreaches any reasonable approach to protection of public interest, the order of the court below will be reversed to the extent that it upholds that requirement.

ORDER

AND Now, this 23rd day of March, 1980, the order of the Court of Common Pleas of Lebanon County dated January 24, 1979 is affirmed to the extent that it declares Section 1307 of the Millcreek Township's Zoning Ordinance, relating to toxic materials, to be

invalid as impermissibly vague; but that order is otherwise reversed, Section 13.04 of the Millcreek Township Zoning Ordinance is declared unconstitutional, and zoning approval of the application of appellant Ivan W. Martin is directed.

President Judge BOWMAN did not participate in the decision in this case.