608 A.2d 585

**Morton J. BERMAN, Appellant,**

**v.**

**BOARD OF COMMISSIONERS OF the TOWNSHIP OF LOWER MERION, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1991.

Decided April 21, 1992.

406

Catherine M. Harper, for appellant.

Gilbert P. High, Jr., for appellee.

Before CRAIG, President Judge, McGINLEY, J., and LORD, Senior Judge.

McGINLEY, Judge.

Morton J. Berman appeals from an order of the Court of Common Pleas of Montgomery County (common pleas court) that dismissed his land use appeal and motion to present additional evidence in his challenge to the validity of a zoning ordinance of Lower Merion Township (Township). In 1987 the Township, along with the Merion Civic

Association, undertook a study of zoning in the Merion section of the Township for the purpose of eliminating split lot zoning and of rezoning properties in a way that would reflect their current uses and preserve the character of the community. Merion is an affluent area, and North Latches Lane, on which Berman's property is located, is "an extraordinarily beautiful residential street" with houses along it that are "substantial, well-maintained and beautifully landscaped with large, mature trees." Findings of Fact, Discussion and Conclusions of the Board of Commissioners of Lower Merion Township, August 1, 1990 (Commissioners' Decision), Finding of Fact (F.F.) No. 2; Reproduced Record (R.R.) 315a. Berman's house is one of the three grandest on the street, a 12,000–square–foot "estate house," with the other two largest on either side of him. His lot is 130,700 square feet (3.25 acres) and is also improved with a four-car garage over which there is an apartment, a tennis court and a swimming pool.

After public hearings, the Board of Commissioners of the Township (Commissioners) enacted Ordinance No. 3110 (Ordinance) on October 10, 1988, which amended the existing zoning ordinance by rezoning approximately 120 properties in the Merion section. The Ordinance placed Berman's property and his adjacent neighbors' in an R–AA district, the highest residential classification, with a minimum lot size of 90,000 square feet (slightly more than two acres).[1] The rest of this R–AA district is a much larger area across Latches Lane and basically to the east, which is currently occupied by institutional uses—a private school, an art museum and a university. Institutional uses are permitted in all residential zones. Berman's property and those of his neighbors were the only residences zoned R–AA in the Merion section. Apart from the institutional area of the R–AA district, properties abutting these three were zoned R–A (minimum lot size 45,000 square feet) and R–2 (minimum lot size 18,000 square feet). Some other properties in the

1. Before rezoning Berman's property was zoned almost entirely R–1, with a minimum lot size of 30,000 square feet.

area are as large or larger than Berman's, but they are not contiguous with other large properties, and they were zoned R–A along with their surroundings. As a result of the rezoning, some thirty-five homeowners can no longer subdivide. If Berman's property were zoned R–A he could subdivide into three lots; he cannot subdivide at all in the R–AA district.[2]

Berman brought a challenge to the validity of the Ordinance before the Commissioners, asserting that the rezoning of his property was confiscatory and not related to a proper zoning purpose and that it constituted illegal spot zoning; he presented a proposed curative amendment. The parties agreed to hold the curative amendment in abeyance pending a decision on the validity challenge. After a hearing the Commissioners rejected the challenge, and Berman appealed to the common pleas court and filed a motion to present additional evidence. After hearing oral argument and considering the briefs of the parties, the common pleas court dismissed the motion and the appeal, and Berman has now appealed to this court. The scope of our review in zoning cases where the lower court took no additional evidence is to determine whether the local governing body committed an error of law or a manifest abuse of discretion. *Board of Supervisors of Millcreek Township v. BAC, Inc.,* 137 Pa.Commonwealth Ct. 494, 586 A.2d 1011 (1991).

The questions presented are (1) whether the normally heavy burden on one challenging the constitutionality of a zoning ordinance is reversed, where the claim is that a very large minimum lot size is unduly restrictive; (2) whether the reasons asserted by the Commissioners relating to preserving the character of the neighborhood constitute extraordinary justification for the large lot size of this R–AA district; and (3) whether the three residences included in the R–AA were treated differently from others similarly

2. The Montgomery County Planning Commission supported the Ordinance as proposed, but the Township planning commission recommended that the three properties involved here be zoned R–A.

situated and, if so, whether there was sufficient justification for the different treatment.

## Burden of Proof

The Commissioners rely, as did the common pleas court, on the principle that a zoning ordinance is presumed to be constitutional, and a challenger bears a "heavy burden" of proving its invalidity. *Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 502 A.2d 585 (1985). Berman, however, notes that "an ordinance must bear a substantial relationship to the health, safety, morals, or general welfare of the community." *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 188, 382 A.2d 105, 108 (1977). He cites *Hopewell Township Board of Supervisors v. Golla*, 499 Pa. 246, 256, 452 A.2d 1337, 1342 (1982), concerning the nature of review of ordinances:

> [T]he function of judicial review, when the validity of a zoning ordinance is challenged, is to engage in a meaningful inquiry into the reasonableness of the restriction on land use in light of the deprivation of landowner's freedom thereby incurred. A conclusion that an ordinance is valid necessitates a determination that the public purpose served thereby adequately outweighs the landowner's right to do as he sees fit with his property, so as to satisfy the requirements of due process.

In *Concord Township Appeal*, 439 Pa. 466, 268 A.2d 765 (1970), the Supreme Court reviewed the validity of a requirement of residential minimum lot sizes of two and three acres and evaluated a claim that such large minimums were exclusionary. The court noted that varying minimum lot sizes in given areas of the community may be justified by planning considerations and other interests, but that at some point the size ceases to be a concern requiring public regulation and becomes a matter of private preference.

> [M]inimum lot sizes of the magnitude required by this ordinance are a great deal larger than what should be considered as a *necessary* size for the building of a house,

and are therefore not the proper subjects of public regulation. As a matter of fact, a house can fit quite comfortably on a one acre lot without being the least cramped. *Absent some extraordinary justification,* a zoning ordinance with minimum lot sizes such as those in this case is completely unreasonable.

*Concord,* 439 Pa. at 471, 268 A.2d at 767 (footnotes omitted; second emphasis added).

■ In *Martin v. Township of Millcreek,* 50 Pa.Commonwealth Ct. 249, 413 A.2d 764 (1980), this court considered an allegation of unduly restrictive or confiscatory impact of a very large minimum one-family lot size in certain areas of the township. Although acknowledging that minimum lot sizes are not inherently unreasonable, we stated:

Thus, granting that the burden of establishing the unconstitutionality of legislation is always on the attacker, we cannot avoid the clear and understandable view of the Supreme Court that, an extraordinary justification related to the public interest is needed to balance the regulatory impact of two- and three-acre lot minimums....

*Martin,* 50 Pa.Commonwealth Ct. at 256–57, 413 A.2d at 767.[3] Our precedents establish that where an owner challenges a minimum lot size of greater than two acres, it is incumbent upon the municipality to demonstrate extraordinary justification in the public interest to sustain its constitutionality.

### Claim of Undue Restriction

The Commissioners describe the character of the Merion district as a fully developed residential community that is a

---

**3.** *See also Mill Valley Associates v. Zoning Hearing Board of Tredyffrin Township,* 126 Pa.Commonwealth Ct. 340, 559 A.2d 985 (1989), holding that no minimum lot size is unconstitutional per se, and the constitutionality of each must be determined on a case-by-case basis, but such a requirement may be declared unconstitutional if the severity of the restrictive impact on the owner is unjustified for police power purposes. Minimum lot sizes of two and three acres may be upheld only in the face of extraordinary justification related to the public interest.

microcosm of every conceivable type of residential development, from huge mansion houses such as Berman's to connected single-family homes and to apartments. In addition, the area has private and public schools, a private museum, parts of a university and some commercial enterprises. The Commissioners assert that the rezoning involved here was undertaken to eliminate a large number of split-zoned lots and to bring the zoning into conformity with the manner in which properties historically developed, so as to preserve the character of the community.[4] They note that preservation of the character of a community is a legitimate objective of zoning, quoting Section 604 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10604, relating to zoning purposes, as it existed when the Ordinance was enacted:

The provisions of zoning ordinances shall be designed:

(1) To promote, protect and facilitate one or more of the following: the public health, safety, morals, general welfare, coordinated and practical community development, proper density of population ....

(2) .... Zoning ordinances shall be made in accordance with an overall program, and with consideration for the character of the municipality, its various parts and the suitability of the various parts for particular uses and structures.[5]

The Commissioners emphasize that the rezoning effort had the enthusiastic and unqualified support of the Merion Civic Association. Numerous residents testified in favor of the proposal, observing that the effect would be to preserve

4. The Commissioners appear to agree with Berman's assertion that the common pleas court did not expressly address the issue of undue restriction; rather, the court focused entirely on the separate claim of spot zoning. The common pleas court implicitly rejected the undue restriction claim by affirming the Commissioners' Decision.

5. Section 604, along with other sections of the MPC, was reenacted and amended by the Act of December 21, 1988, P.L. 1329, effective in sixty days, i.e., some four months after the enactment of Ordinance 3110. As reenacted and substantially amended, Section 604 deletes the reference to the "character of the municipality."

the community and, as a result, to preserve the investments that people had in their homes. Some who testified in favor would themselves lose the ability to subdivide, but opined that the rezoning would improve the value of their property by preserving the status quo of a fully developed community and that it would provide a significant economic benefit to the community as a whole.

Berman contends that the rezoning of his property constituted an effort to make "living museums" of the three properties involved, to preserve the character established by forces of economics, demographics and taste before zoning existed. He asserts that the Township used a "lot-freezing device" to achieve a popular or desirable result, but that the method chosen by the Township ignores the essential difference between public and private interests. The Commissioners characterize this as an "extraordinary statement!"

> Assuming arguendo that the ordinance in question is about 'lot freezing', which it isn't, what is evil about the use of zoning to achieve a popular or desirable result? If an entire community feels that the mixed housing character of the community can best be preserved by zoning properties generally according to how they have already been developed, aren't they asserting the 'public' interest; and the objector who wishes to subdivide off his side yard, doesn't he represent the 'private' interest? The appellant argues the reverse!

Brief for Appellee at 17.

This argument reveals a misperception on the part of the Commissioners of the purposes and limits of zoning authority. In *National Land and Investment Co. v. Easttown Township Board of Adjustment*, 419 Pa. 504, 215 A.2d 597 (1965), our Supreme Court affirmed an order that held a requirement of a four-acre minimum lot size in certain sections of a township to be unconstitutional. The court acknowledged the presumption of constitutionality that attaches to zoning ordinances, but it also noted that the nature of zoning involves "governmental restrictions upon a landowner's constitutionally guaranteed right to use his

property, unfettered, except in very specific instances, by governmental restrictions." *National Land,* 419 Pa. at 522, 215 A.2d at 607 (footnotes omitted; citing U.S. Const. amends. V and XIV, Pa. Const. art. I, §§ 1 and 10). The limitation upon the exercise of the zoning power requires that such ordinances be enacted "for the health, safety, morals or general welfare of the community.... Such ordinances must bear a substantial relationship to those police power purposes.... Regulations adopted pursuant to that power must not be unreasonable, arbitrary or confiscatory." *Id.,* 419 Pa. at 522–23, 215 A.2d at 607 (citations omitted). The court noted the advantages of larger lots over smaller ones, but it pointedly observed, "At some point along the spectrum, however, the size of the lot ceases to be a concern requiring public regulation and becomes *simply a matter of private preference." Id.,* 419 Pa. at 524, 215 A.2d at 608 (emphasis added).

In considering one asserted justification for the four-acre minimum as preserving the character of the area by protecting the "setting" for a number of old homes, which goal was claimed to fall within the ambit of promoting the "general welfare," the court stated:

> Unfortunately, the concept of the general welfare defies meaningful capsule definition and constitutes an exceedingly difficult standard against which to test the validity of legislation. However, it must always be ascertained at the outset whether, in fact, it is the *public* welfare which is being benefited or whether, disguised as legislation for the public welfare, a zoning ordinance actually serves purely private interests.

> There is no doubt that many of the residents of this area are highly desirous of keeping it the way it is, preferring, quite naturally, to look out upon land in its natural state rather than on other homes. *These desires, however, do not rise to the level of public welfare. This is purely a matter of private desire which zoning regulation may not be employed to effectuate.*

*National Land,* 419 Pa. at 530–31, 215 A.2d at 611 (second emphasis added).

█ If all of the neighbors of an owner of a ten-acre residential lot agree that it would be desirable and would increase their property values if that lot were no further developed, such a collection of *private* interests does not add up to a "public" interest cognizable by zoning, in the absence of some recognized legitimate zoning purpose. Conversely, an owner's assertion of the constitutional right to deal with land as he pleases so long as he does not violate a valid zoning restriction or other provision of law is protection of a *public* interest of the highest order. Thus Berman is entirely correct in asserting that the mere popularity or desirability of a result does not necessarily create a permissible zoning objective.

The zoning purpose actually advanced by the Commissioners in their decision is the preservation of the character of the neighborhood. The Commissioners found that a potential subdivision of the Berman property into three lots under R–A zoning would have

> a substantial detrimental affect [sic] on the character of the neighborhood and a consequential devaluing influence on adjacent properties. Six new homes, constructed on small lots at the east end of North Latches Lane, prior to rezoning, serve to visually illustrate this conclusion.

Commissioners' Decision, F.F. No. 16; R.R. 317a. As Berman points out, the Commissioners are silent as to the nature of the detrimental effect of the six houses at the other end of his street.

In the Discussion portion of the Commissioners' Decision they elaborate on the character of the neighborhood rationale. "There was ample testimony that this is a beautiful residential community, improved with substantial homes. However, Mr. Berman's property, and those of his neighbors on either side, stand out as particularly substantial estate residences." *Id.* at 7; R.R. 320a. "The purpose of the rezoning of Merion was to reflect that which exists on the property and to zone this entire section of the communi-

ty to conform with actual development." *Id.* at 10; R.R. 323a. Berman's estate house and its accompanying features "require a larger lot area and require the extensive landscaping and tree maintenance that the property presently enjoys if it is to continue to add to the character of the surrounding community." *Id.* at 10–11; R.R. 323a–24a.

■ These statements demonstrate that the Commissioners' concern with the "character of the neighborhood" is based solely on aesthetic considerations. The "actual development" of the area includes the three properties zoned R–AA, which are stately homes on large and lovely lots. The Commissioners, with the support of neighboring homeowners, have determined to preserve that aesthetically pleasing configuration by preventing the owners of those properties from subdividing. *National Land* held, with reference to the "character of the area" arguments advanced there, "Zoning may not be sustained *solely* on the basis of aesthetic considerations." *National Land,* 419 Pa. at 528 n.29; 215 A.2d at 610 n.29 (citing *Rogalski v. Upper Chichester Township,* 406 Pa. 550, 178 A.2d 712 (1962), and *Anstine v. Zoning Board of Adjustment,* 411 Pa. 33, 190 A.2d 712 (1963)). *See also White Advertising Metro, Inc. v. Zoning Hearing Board of Susquehanna Township,* 70 Pa.Commonwealth Ct. 308, 453 A.2d 29 (1982) (municipality may include aesthetic factors in the exercise of its zoning powers, but aesthetics alone cannot justify zoning decisions).[6]

The Commissioners contend that this case is controlled by *Kelly v. Zoning Hearing Board of Upper Moreland Township,* 87 Pa.Commonwealth Ct. 534, 487 A.2d 1043 (1985). In *Kelly* all of the homes in a particular development were originally covered by restrictive covenants in deeds limiting

---

6. In their brief to this court the Commissioners mention that zoning for density is a legitimate exercise of the police power, citing *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A.2d 851 (1958). Although that proposition is unassailable, the Commissioners did not find and do not argue that permitting three houses on Berman's lot of more than three acres would cause overcrowding.

lot size to a minimum of three acres. When the covenants expired the residents successfully petitioned the board of commissioners to adopt the three-acre minimum for their area. Twenty years later, owners of a six-acre lot sought to subdivide into three lots rather than the two permitted. They sought a variance and also attacked the validity of the ordinance as being exclusionary and unduly restrictive. The zoning hearing board and the court of common pleas sustained the validity of the ordinance and this court affirmed.

On the undue restriction issue, we noted that cases in which minimum lot sizes had been overturned concerned relatively large tracts of undeveloped land, referencing *National Land, Concord Township Appeal,* and *Martin.* In *Kelly,* by contrast, the restriction applied to about 145 acres, of which only approximately seventy acres, the development in question, were affected, because the rest of the district lay in the watershed of a creek, had difficult access and was subject to flooding. The development had long since been fully improved with approximately twenty home sites. We held that the circumstances of the case—the fact that the development was regulated by virtue of deed restrictions before there was any zoning identically to the challenged scheme, that the zoning regulation was sought by the residents and that the district was small and much of it not readily developable—pointed to the presence of "extraordinary justification related to the public interest" as required by *Martin.*

*Kelly* is distinguishable from the present controversy. The Commissioners have consistently argued that Merion is fully developed and that "the 'path of development' moved through this area decades ago." Brief for Appellee at 17. However, of the 120 properties that were rezoned by the Ordinance only some thirty-five may no longer be subdivided. As already noted, the rest may still be, including some properties larger than Berman's but subject to a 45,000–square–foot minimum. These facts undercut the assertion that the area is fully developed and support Berman's

contention that his lot was not fully developed until the Township pronounced it so by enacting the Ordinance. More importantly, in *Kelly* this court concluded that evidence of record concerning the particular circumstances of that case established the "extraordinary justification" required to sustain the validity of a large minimum lot size. In the present case the Township has advanced only aesthetic considerations as the basis for its action. Such a consideration does not in itself justify a zoning decision, much less constitute "extraordinary justification."

■ Accordingly, we conclude that the two-acre minimum lot size imposed by the Ordinance on Berman and his neighbors constitutes an unconstitutional and undue restriction. In view of this conclusion on this issue, we need not address Berman's separate claim that the placing of the three properties into the R–AA district constituted impermissible "spot zoning." We shall remand this matter to the common pleas court with instructions to remand to the Commissioners for further proceedings on the curative amendment proposed by Berman at the time of filing of his challenge to the Ordinance.

## ORDER

AND NOW, this 21st day of April, 1992, the Order of the Court of Common Pleas of Montgomery County at No. 90–15325, dated April 4, 1991, is reversed, and the requirement of the Township of Lower Merion Ordinance No. 3110 that properties zoned R–AA have a minimum lot size of 90,000 square feet is declared to be invalid. This matter is remanded to the Court of Common Pleas with instructions to remand to the Board of Commissioners of the Township of Lower Merion for consideration of the curative amendment proposed by Morton J. Berman in relation to Ordinance No. 3110.

Jurisdiction relinquished.