## In re Appeal of C&M Developers Inc.

72

C.P. of Bucks County, no. 98-05738-19-6.

*John Rice,* for appellee Bedminster Township.
*John VanLuvanee,* for appellant C&M Developers Inc.

DEVLIN SCOTT, *J.,* June 30, 2000—C&M Developers Inc. has appealed the decision of the Bedminster Township Zoning Hearing Board denying C&M's substantive challenge to the validity of the Bedminster Township Zoning Ordinance. C&M claims that the zoning ordinance is constitutionally invalid because it imposes unreasonable and extreme restrictions upon the development of single-family detached housing in the township's AP-Agricultural Preservation Zoning District. For the reasons discussed below, we deny C&M's appeal and affirm the decision of the board.

A review of the record and the board's findings of fact reveals the following: C&M is the equitable owner of five tracts of land in Bedminster Township. The properties contain a total of 199.9 acres and are located between Applebutter, Log Cabin, Scott, and Smith School Roads. The properties are zoned AP-Agricultural Protection.

Bedminster is a rural, agricultural township. The township sits within a significant agricultural area of Bucks County. F.F., 47; Bedminster Township comprehensive plan 1996, map 3. In 1990, Bucks County produced $54 million of agricultural sales, which ranked the county as the thirteenth largest seller of agricultural products in Pennsylvania. Comprehensive plan, 27. By 1992, these sales had increased 15 percent to $62 million, twelfth largest amount in the Commonwealth. F.F., 45. Moreover in 1992, Bucks County ranked first in sod, floriculture, bedding plants, and foliage plants sales and second in nursery crops sales. The county also had the second most acreage of vegetables and sweet corn in the Commonwealth, while ranking twelfth in overall agricultural acreage. Exhibit T-3; F.F., 46.

The township provided an apt description of its rural environment in its brief of appellee, Bedminster Township, in opposition to land use appeal. This description, which was uncontradicted by C&M and strongly supported by the board's findings of fact and the record, stated the following:

"Bedminster Township has a total area of 19,303 acres. Of that total, 17,167 acres [as of 1990], are included in four land uses of a rural and agricultural character, including 5,178 in rural residential uses (dwelling on multi-

acre lots of at least five acres), equaling 26.83 percent of the township's total land area; 8,267 acres in active agricultural uses, equaling 42.83 percent of the township's total land area; 944 acres in recreational uses, equaling 4.89 percent of the township's total land area; and 2,778 acres vacant, equaling 14.39 percent of the township's total land area. The total acreage in land uses of a rural and agricultural character total 88.94 percent of the township's total land area, and is consistent with land uses of a rural community. [See Bedminster Township comprehensive plan 1996; exhibit T-16.]

"In 1990, Bedminster Township had the fifth lowest population density (number of people per square mile) in the Upper Bucks County Region as established by the Bucks County Planning Commission, which also represented the fifth lowest population density in Bucks County as a whole. [See exhibit T-21.]

"Between 1990 and 1997, the population of Bedminster Township increased by 141 people, representing an average of 16.11 people per year; and a percentage increase over that entire period of 3.1 percent, or an annual average of 0.44 percent. [See exhibit T-18; exhibit A-54.]

"Between 1990 and 1997, only 67 new residences were constructed in Bedminster Township, representing an average of 8.6 new residences per year; (sic) Between 1988 and 1998, only 83,721 sq. ft. of nonresidential land use was developed. There are no shopping centers or significant retail shopping opportunities in Bedminster Township. [See exhibit T-18; Bedminster Township comprehensive plan 1996.]

"All of the roads within the township, including those characterized as 'arterial' and 'collecter' roads, are two

lane, high crown rural roads with inadequate or no shoulders. Drainage improvements, where they exist, consist of open swales. All existing land uses, with the exception of a few residential subdivisions and an industrial part, take direct access from the township and state roads within the township. There is only one traffic light in the entire township, that on its border with Hilltown Township. There are no existing or proposed public transportation centers or facilities within Bedminster Township. There are no airports within Bedminster Township with the exception of a small, private landing strip. [See exhibit T-17; exhibit A-51; Bedminster Township comprehensive plan 1996.]" Respondent's brief, pp. 7-8; see also, *Appeal of Heritage Building Group Inc.,* 72 Bucks Co. L. Rep. 188 (1999).[1]

---

1. The court in this case, decided in March 1999, found the following regarding the character of Bedminster:

"An examination of the record reveals that Bedminster is essentially a rural and agricultural community. Based upon Delaware Valley Regional Planning Commission projections through 2010, Bedminster would still be classified as rural. Bedminster's population grew by 11 percent during the period between 1970 and 1980 and by 27 percent during the period between 1980 and 1990. While the increase in population may be dramatic if expressed in percentages, when the actual numbers are examined, its growth is modest. For example, from 1970 to 1990 the population increased by 1340 or 67 people per year, and from 1990 to 1995 the population increased in total only by 89. There are no substantial commercial, industrial, public transportation or road construction projects. No highways run through Bedminster and the only major roads (Route 611 and Route 313), both of which are just two lanes, are on the perimeter of the township. . . . In this same period [from 1970 to 1990], Bedminster's population grew by only 68 people per year, and from 1990 to 1995, Bedminster's growth was only 18 people per year . . . . There is only one traffic light located entirely in Bedminster and there are no shopping centers in Bedminster."

On February 14, 1996 the township enacted Resolution 96-02 pursuant to section 609.2 of the Pennsylvania Municipalities Planning Code. This resolution declared the township's then current zoning ordinance to be invalid and stated in part:

"[T]he Bedminster Township Board of Supervisors has determined that its current zoning ordinance is substantively invalid because of its failure to provide for cluster housing options or its failure to designate sufficient areas for mixed use developments, and because the lots sizes set forth in the current zoning ordinance may not be justified."

At the time of this resolution, the only permitted form of residential development in the township was single-family detached dwellings on 80,000 square foot lots. The zoning districts that allowed this form of development covered the large majority of the township.

On August 12, 1996, at the end of the six-month moratorium period provided to the township under section 609.2, the township amended its zoning ordinance by adopting ordinance no. 118. This ordinance eliminated several zoning districts and created a new "AP-Agricultural Preservation zoning district" which covers approximately 90 percent of the township. This ordinance also expanded the R3 zoning district to accommodate the anticipated growth of demand for single-family, multi-family, and mobile homes within the township.

The AP zoning district was specifically established to preserve the township's agricultural lands. Ordinance 118 sets forth two sets of restrictions within the district based on original lot size. Tracts of 10 acres or less can be subdivided into lots no smaller than 80,000 sq. ft. All of

the larger tracts, however, are deemed to be agriculturally significant, and their development is limited based on the soil types found within their boundaries. The soil types are separated into three categories of soil: prime farmland; farmland of statewide importance; and farmland of local importance. These categories are based on the soil classifications compiled by the United States Department of Agriculture, Soil Conservation Service. Under this ordinance, any plan to subdivide a tract containing areas of soil that fall into any of these three categories must allow for the permanent restriction from development and/or dedication to the township of 60 percent of the prime farmland and 50 percent of the farmland of statewide importance and/or farmland of local importance present on the tract.

Ordinance 118 also limits the size of the lots created out of the developable remainder of the tract to "one good acre" and requires a minimum building envelope of 10,000 sq. ft. on each lot. "One good acre" means that the lot must contain one acre free and clear of watercourses, floodplains, floodplain soils, wetlands, lakes or ponds. Meanwhile, the building envelope requires that at least 10,000 sq. ft. of this "one good acre" being contiguous to allow for the construction of the house on solid ground.

On August 20, 1996, C&M filed a substantive challenge to the newly revised zoning ordinance with the board. C&M alleged that the provisions of the zoning ordinance:

"which regulate development of single-family detached dwellings in the township's A-P zoning district are unreasonable and invalid by reason of the fact that,

with respect to the subdivision and development of any tract larger than 10 acres containing soils identified and defined by the zoning ordinance as being agriculturally significant, there is a requirement that between 50 percent and 60 percent of the tract be set aside and perpetually restricted from development; and

"because the degree to which the developable portion of any such tract may be developed is unreasonably limited." F.F., 9.

The board held a series of 29 hearings from September 16, 1996 to September 20, 1999 to receive evidence with respect to C&M's challenge. On October 18, 1999, the board issued its decision denying the challenge. C&M filed this timely appeal.

Since we did not conduct a hearing on this matter, nor did we receive any additional evidence, the applicable standard of review is whether the board committed an error of law or an abuse of discretion in denying the substantive challenge. An abuse of discretion can only be found if the board's findings are not supported by substantial evidence. *Larsen v. Zoning Board of Adjustment,* 543 Pa. 415, 421, 672 A.2d 286, 288-89 (1996). Substantial evidence is that evidence which is relevant and acceptable to a reasonable mind as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). See also, *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh,* 554 Pa. 249, 721 A.2d 43 (1998). We further note that where the court does not receive any additional evidence, findings of facts made by a board whose decision is appealed "shall not be disturbed by the court if supported by substantial evidence." 53 P.S. §11005-A.

A zoning ordinance is presumed to be constitution-ally valid. *BAC Inc. v. Board of Supervisors of Millcreek Township,* 534 Pa. 381, 633 A.2d 144 (1993). Therefore, a party seeking to overturn such an ordinance bears a heavy burden of proving the ordinance's invalidity. Even "where the validity of the zoning ordinance is debatable, the legislative judgment of the governing body must control." *Kirk v. Zoning Hearing Board of Honey Brook Township,* 713 A.2d 1226, 1229 (Pa. Commw. 1998), *alloc. denied,* 558 Pa. 615, 737 A.2d 745 (1999); see also, *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 70, 141 A.2d 851 (1958) ("A legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the minds of the court.").

In Pennsylvania, an ordinance is deemed a constitu-tional exercise of police power when it promotes the public health, safety, morals and general welfare and is substantially related to the purpose it purports to serve. When an ordinance is constitutionally challenged, a court will review this challenge to the ordinance under a sub-stantive due process analysis. This type of analysis re-quires the court to weigh the public interest served by the ordinance against the exclusionary or confiscatory impart of the ordinance on individual rights. The party challenging an ordinance bears the burden of proof and must establish that the ordinance's provisions are arbi-trary, unreasonable and unrelated to the public health, morals, safety and welfare. *Boundary Drive Associates v. Shrewsbury Township Board of Supervisors,* 507 Pa. 481, 489, 491 A.2d 86, 90 (1985). Whether or not the

restrictions created by the ordinance are consistent with the stated purpose of the particular zoning district is a significant factor in determining the reasonableness of the ordinance. *Honey Brook,* 713 A.2d at 1229. If the challenging party is unable to prove its case, then the public interest served by the ordinance outweighs its impact on individual rights, and the ordinance must be upheld.

In its appeal, C&M requests the following from the court:

"[T]hat the decision of the zoning hearing board be reversed; that the provisions of the Bedminster Township zoning ordinance regulating development of single family detached housing in the AP zoning district and requiring the mandatory set aside of 60 percent of prime farmland and 50 percent of farmland of statewide importance and 50 percent of farmland of local importance be declared unconstitutional and invalid; and order and direct that C&M be granted definitive relief to develop the properties in accordance with the sketch plans marked as exhibits A-91 and A-94, subject to the submission and approval of preliminary and final subdivision and land development plans under the provisions of the Bedminster Township subdivision and land development ordinance in effect as of the date of the filing of the substantive challenge."

In its brief, however, C&M only presents the court with the following two questions:

"Whether the township has presented extraordinary justification for the unreasonable and extreme restrictions imposed upon development of single-family detached housing in the AP-zoning district.

"Whether the township, by declaring the challenged zoning ordinance to be invalid and by imposing a moratorium on landowner curative amendments, has, as a matter of law, admitted that C&M's challenge has merit."

We will first address the two questions C&M raises in its brief, and then we will discuss the requests C&M made in its appeal.

## EXTRAORDINARY JUSTIFICATION

It is a well established rule in Pennsylvania that municipalities can zone for density by using procedures such as minimum lot sizes. A minimum lot size requirement is a legitimate exercise of police power and is not unconstitutional per se. Although, the constitutionality of these requirements must be determined on a case by case basis, when the ordinance calls for a minimum lot size in excess of two acres, the municipality must show extraordinary justification for this requirement. *Honey Brook,* 713 A.2d at 1229-30; *Berman v. Board of Commissioners of Township of Lower Merion,* 147 Pa. Commw. 405, 608 A.2d 585 (1992).

C&M argues that the AP zoning district and the "one good acre" provisions of the zoning ordinance result in a zoning density of 2.8 acres per dwelling on a typical site in the township and in a density of almost 4 acres per dwelling unit on their properties. Therefore, C&M believes that Bedminster must put forth extraordinary justifications to defend these restrictions. C&M's argument, however, misconstrues the applicable law, as well as the facts of the instant case.

The concept of extraordinary justification was first set forth in *Concord Township Appeal,* 439 Pa. 466, 268 A.2d 765 (1970). In that case, Concord Township's zoning

scheme called for a minimum lot size of two or three acres. The court found that these requirements were a great deal larger than what was necessary to build a house, and went on to state: "a house can fit quite comfortably on a one acre lot without being the least bit cramped. Absent some extraordinary justification, a zoning ordinance with minimum lot sizes such as those in this case is completely unreasonable." *Id.* at 471, 268 A.2d at 767. (footnote omitted) The *Concord* court and the courts in the cases that followed it found fault with minimum lot requirements above two acres not because the lots were too big, but rather, because the size requirement of the lot bore no relation to the land it was situated on or to the house that was to be built upon it. In other words, the requirements were arbitrary, unreasonable, and unrelated to the public health, safety, welfare, and morals, and therefore they were an invalid exercise of police power. See *Concord, supra; Honey Brook, supra; Hock v. Board of Supervisors of Mount Pleasant Township,* 154 Pa. Commw. 101, 622 A.2d 431 (1993); *Reimer v. Board of Supervisors of Upper Mount Bethel Township,* 150 Pa. Commw. 323, 615 A.2d 938 (1992); *Berman, supra; Mill Valley Associates v. Zoning Hearing Board of Tredyffrin Township,* 126 Pa. Commw. 340, 559 A.2d 985 (1989), *alloc. denied,* 527 Pa. 656, 593 A.2d 427 (1990); *Martin v. Township of Millcreek,* 50 Pa. Commw. 249, 413 A.2d 764 (1980).

This is not the situation with Bedminster's minimum lot requirement. First, Bedminster's minimum lot requirement is "one good acre." This requirement calls for a minimum lot size of one acre.[2] The fact that the town-

---

2. The zoning ordinance allows for up to 20 percent of the one good acre to contain wetland margins or lake and pond shoreline. So,

ship does not allow certain types of land be counted towards this one acre requirement has no bearing on whether or not extraordinary justifications are needed. The extraordinary justifications standard arose because the courts felt that houses only need a certain amount of land to support their construction, which they set at two acres, and that anything beyond that was superfluous. Thus, requirements for lots larger than two acres needed to be supported by extraordinary justifications for this additional land. See *Concord Township Appeal, supra.*

C&M is basically arguing that it should be allowed to create lots out of watercourses, floodplains, floodplain soils, wetlands, lakes and ponds. This is patently ridiculous. These areas cannot be built upon without major engineering improvements that are regulated, if not banned, by state and federal statutes. The township cannot be held accountable for regulations not of their own making. The extraordinary justification rule applies to minimum lot requirements of more than two acres of buildable land within a tract, not all land. As such, Bedminster's "one good acre" requirement falls well under the bright line rule of two acres set forth in *Honey Brook, supra,* and thus, does not need to be extraordinarily justified.

Second, C&M's argument confuses lot density with minimum lot size requirements. C&M argues that lot density should be used to measure the township's minimum lot size requirement because enforcement of all of the township's regulations results in an actual effective minimum lot size that is much larger than one acre. The

---

the minimum amount of buildable land actually needed for a lot is only .8 acre.

extraordinary justification standard, however, only applies to blanket minimum lot size requirements that explicitly state "a building lot must be at least 'x' acres." We could find no case that applied this standard based on the actual density of lots after all the zoning regulations were met.

Furthermore, C&M does not appropriately calculate the lot density. To get its density of nearly four acres per dwelling unit, C&M must have divided 57 dwellings (total number of houses C&M calculated they could build under the township's regulations) into 199.9 acres (total size of the properties).[3] This formula, however, fails to take into account several important variables. First, it does not exclude acreage used for roads, utilities and storm water management. This acreage would have to be used regardless of whether minimum lot size requirements were in place and thus, should not be included in any calculation of an effective requirement. Second, the formula does not exclude wetlands acreage, as it should for the reasons discussed above. Moreover, since C&M never planned to develop this acreage (see exhibits A-91, A-94), they cannot use this acreage to decrease the lot density under the township's regulations. Lastly, C&M wrongly included the agriculture preservation lands in their calculations. C&M did not have to purchase this land. C&M could have had the sellers subdivide the properties and then convey to C&M only that portion which was developable.[4] C&M made a decision

---

3. Actually, this formula arrives at a density of 3.5 acres per dwelling unit, not "closer to four acres per dwelling unit."

4. Several of the sellers actually retain large pieces of land under the contracts they have with C&M. See exhibits A-64, A-65, A-71, and A-72.

to purchase all of the acreage contained within the properties and must reap both the benefits and the burdens of this ownership. This decision cannot be used against the township in an attempt to invalidate its zoning ordinances.

This examination of the problems with C&M's formula highlights why the extraordinary justifications standard only applies to blanket minimum lot size requirements. Lot density is too nebulous and subjective a concept to be consistently applied under a variety of fact patterns. Therefore, we hold that Bedminster's minimum lot size requirement is one acre, and the township does not need to provide extraordinary justifications to uphold the validity of their zoning ordinance.

Finally, even if we do apply the extraordinary justification standard, the "one good acre" requirement meets this rule. The township excludes watercourses, floodplains, floodplain soils, wetlands, lakes and ponds to protect environmentally sensitive areas from destruction. This type of zoning is specifically allowed under 603(b)(5)[5] and 604(1)[6] of the M.P.C. Furthermore, these exclusions protect the public from purchasing houses built on unsuitable ground. We find that these reasons constitute the type of extraordinary justifications necessary to uphold the minimum lot size restrictions greater

5. This section states: "[z]oning ordinances may permit, prohibit, regulate, restrict and determine: (5) [p]rotection and preservation of natural resources and agricultural land and activities."

6. This section provides: "[t]he provisions of zoning ordinances shall be designed: (1) To promote, protect and facilitate any or all of the following: . . . as well as preservation of the natural, scenic and historic values in the environment and preservation of forests, wetlands, aquifers and floodplains."

than two acres. The township's "one good acre" requirement is reasonably related to legitimate public interests of preserving natural resources and protecting the public from flooding and other forms of water damage. At the same time, this requirement is narrowly tailored to expand or contract its restrictions as conditions vary from lot to lot. Since this requirement only burdens those lots which contained these certain conditions, it furthers the public's interest without exceeding the township's police power. *Reimer,* 150 Pa. Commw. at 330-31, 615 A.2d at 941-42 (adjustable minimum lot size requirements exceed the extraordinary justification standard).

## RESOLUTION 129

On August 18, 1999, the Bedminster Board of Supervisors adopted Resolution 129. This resolution stated in part:

"Whereas, the Bedminster Township Board of Supervisors seeks the protection of section 609.2 of the Pennsylvania Municipalities Planning Code, July 31, 1968, P.L. 805, no. 247, as amended.

"Now, therefore, it is hereby resolved by the Bedminster Township Board of Supervisors as follows:

"The Bedminster Township Zoning Ordinance, as amended, may be substantively invalid.

"The possible invalidity of the zoning ordinance consists of an inconsistency in various agricultural uses which are permitted in the AP zoning district, the impact of the table of dimensional requirements and the environmental performance standards of the ordinance throughout the various zoning districts, and the possible lack of available land for those zoning purposes set forth

at section 604(3), (4), and (5) of the Municipalities Planning Code.

"The Bedminster Township Planning Commission is hereby directed to prepare and consider a curative amendment amending the Bedminster Township Zoning Ordinance so as to cure the declared potential invalidity."

C&M argues that section 609.2 only applies to those zoning ordinances that are found to be substantially invalid. Therefore, since the township passed this resolution under the aegis of section 609.2, the resolution must be construed as an admission by the township that the zoning ordinance is invalid and that C&M's substantive challenge has merit and should be upheld.

This same argument was put forth by the petitioner in *Appeal of Marple Gardens Inc.,* 99 Pa. Commw. 485, 514 A.2d 216 (1986), *alloc. denied,* 514 Pa. 650, 524 A.2d 496 (1987). In *Marple Gardens,* the petitioner was the owner of undeveloped real estate in Marple Township and wanted to build a mobile home park on this property. On May 5, 1980,[7] the petitioner filed a challenge to Marple Township's zoning ordinance, alleging that it was invalid because it made no provision for mobile home parks. The township scheduled hearings to be held on this challenge for June 24 and 30, 1980, but on June 9, 1980, the township board of commissioners passed a resolution pursuant to section 609.2 that declared its zoning ordinance to be substantially invalid. This resolution was reaffirmed on June 23, 1980, and the hearing dates on the challenge were cancelled. On December 3 and 8, 1980, the township adopted its own

---

7. The opinion actually lists this date as May 5, 1983. This must be in error, since the challenge must have been filed prior to June 9, 1980, and we believe that the challenge was filed on May 5, 1980.

curative amendment that established a mobile home park district in the township. This district, however, did not include the petitioner's property. *Id.* at 488, 514 A.2d at 217-18.

Prior to the township's adoption of this curative amendment, the petitioner filed two appeals to the court of common pleas on July 22 and August 28, 1980. Both of these appeals were based on the township's failure to hold timely hearings on the petitioner's challenge. After consolidating these appeals, the trial court held that the township's 609.2 resolution established, as a matter of law, that its zoning ordinance was invalid. The court went on to direct the township to issue a zoning permit to petitioner. The township appealed this order. *Id.* at 489, 514 A.2d at 218.

Upon examining the trial court's holding that the township's 609.2 resolution established the zoning ordinance's invalidity as a matter of law, the Commonwealth Court found this holding improper on two grounds. First, the Commonwealth Court noted that the resolution was passed after the petitioner had filed its challenge. The court held that the 609.2 resolution constituted a separate proceeding that was not before the trial court on appeal, and thus "the township's factual findings on which it based its declaration of invalidity were not before the court for review." The court went on to state that while the township's actions in passing this resolution may have had some evidentiary value, the trial court was obligated to make its own findings of fact on this matter.[8] Second, the Commonwealth Court held that

---

8. Since the township held no hearings on appellant's challenge, the trial court appointed a master to hold hearings and make recommendations to the court.

the 609.2 resolution could not establish the zoning ordinance's invalidity as a matter of law. The court found that since the determination of whether an ordinance is exclusionary is a question of law, a local agency's finding on this question cannot bind a reviewing court. Thus, the determination of this issue remains an appropriate subject for judicial review. *Id.* at 415, 514 A.2d at 221.

In the instant case, Resolution 129 was passed over three years after C&M filed its substantive challenge. Under the holding in Marple Township, we are not obligated to find as a matter of law that this resolution established the invalidity of the zoning ordinance. Moreover, a close reading of the language of the resolution shows that it is immaterial to the matters before this court. This resolution only evidences the township's concern that the zoning ordinance *"may"* be invalid regarding various agricultural *uses*, the table of dimensional requirements, and the environmental performance standards. The resolution does not find the zoning ordinance to be invalid but merely discusses "possible" and "potential" invalidity, nor does the resolution involve the AP district's size and restrictions upon development, the "one good acre" requirement, nor the 10,000 sq. ft. building envelope requirement. We hold that Resolution 129 does not establish the invalidity of the township's zoning ordinance as a matter of law and is inconsequential to the matters at hand.

## AP-AGRICULTURAL PRESERVATION ZONING DISTRICT

Zoning to preserve agriculture is allowable under the MPC. Section 603(b)(3) states that "[z]oning ordinances

may permit, prohibit, regulate, restrict and determine [the] protection and preservation of natural resources and agricultural land and activities." This language is reiterated in section 604(3), "[t]he provisions of zoning ordinances shall be designed [t]o preserve prime agriculture and farmland considering topography, soil type and classification, and present use," and in section 606, "the need for preserving agricultural land and protecting natural resources." Moreover, this type of zoning has been upheld by the courts as a proper exercise of police power. *Boundary Drive Associates v. Shrewsbury Township Board of Supervisors,* 507 Pa. 481, 491 A.2d 86 (1985); *Hopewell Township Board of Supervisors v. Golla,* 499 Pa. 246, 452 A.2d 1337 (1982); *Honey Brook, supra; Henley v. Zoning Hearing Board of West Fallowfield Township,* 155 Pa. Commw. 306, 625 A.2d 132 (1993); *Codorus Township v. Rodgers,* 89 Pa. Commw. 79, 492 A.2d 73 (1985).

In *Boundary Drive,* the appellant landowner had challenged certain provisions of the township's zoning ordinance that were designed to preserve agricultural land. The challenged provisions of the zoning ordinance designated certain parts of the township as agricultural districts and restricted the development of property within these districts based on the soil capability of the property. The ordinance created categories of farmland. The first category encompassed the best farmland in the township, and the ordinance prohibited all nonagricultural use of this type of land except for the construction of two dwelling units on each tract consisting entirely of this highest quality farmland. The second category comprised of good quality farmland but which was not as produc-

tive as the farmland in the first category. Owners of property falling within this category could place non-farm dwelling units on their property, the number of which was determined by an area-based density schedule. This schedule increased the number of permissible dwellings as the size of the property increased, but not in direct linear proportion with the increase in property size. The third category was basically a buffer zone between agricultural and residential uses, created to minimize conflicts between these two uses. It encompassed soils not suitable for agricultural purposes and allowed for the development of small farms, large homesites or a variety of uses permitted by special exemption. *Boundary Drive,* 507 Pa. at 487, 491 A.2d at 88-89.

In *Boundary Drive,* the Pennsylvania Supreme Court found that the preservation of agricultural land through zoning regulations was a legitimate governmental goal. *Id.* at 490, 491 A.2d at 90. The court then compared Shrewsbury's ordinance with the ordinance in *Hopewell, supra.* In *Hopewell,* the Supreme Court had invalidated the ordinance because it failed to adjust its restrictions to the size of the lot they were being imposed upon, and thus these restrictions were arbitrary and discriminatory.[9] *Id.* at 258-59 452 A.2d at 1343; *Boundary Drive,* at 493, 491 A.2d at 91. The *Boundary Drive* court distinguished Shrewsbury's ordinance from Hopewell's by pointing out that the restrictions placed on development by Shrewsbury's ordinance as a whole varied based on soil capacity and on the size of the original tract. *Boundary*

9. Hopewell Township's ordinance limited subdivisions in its prime agricultural zone to a maximum of five lots regardless of the size of the original tract of land.

*Drive,* 507 Pa. at 493, 491 A.2d at 91. The court went on to hold that Shrewsbury's zoning ordinance scheme was substantially related to the township's goal of agricultural preservation and thus was not unduly restrictive when balanced against the public interest in protecting farmland. *Id.* at 494, 491 A.2d at 92. Later courts have upheld a variety of agricultural preservation zoning provisions on a case by case basis. *Honey Brook, supra* (upheld density regulation designed to discourage development of agricultural land); *West Fallowfield, supra* (ordinance preserving agricultural land based on soil type cannot be considered arbitrary under the language of the MPC that explicitly allows this); *Codorus, supra* (upheld provisions limiting number of dwellings to a scale based on size of tract).

In challenging the validity of the township's agricultural preservation zoning provisions, C&M raises several arguments trying to show that the zoning ordinance is unconstitutionally restrictive and arbitrary. These arguments include, but are not limited to: the AP district is too large; the zoning ordinance protects soils that are not agriculturally viable; the zoning ordinance does not actually result in the preservation of agricultural lands; the zoning ordinance does not ensure the preserved land actually is farmed; Bedminster is not a farming community and agriculture is not economically viable within the township. All of these arguments, however, fail to overcome the "heavy burden of proof" placed upon parties who challenge the constitutional validity of zoning ordinances. Moreover, many of these arguments attack legislative decisions made by the township in designing the zoning ordinance. We cannot address these issues

because the courts are neither a super zoning hearing board nor a planning commission of last resort which can substitute their judgment for that of the township. *Honey Brook,* 713 A.2d at 1231.

Under section 606 of the MPC, municipalities are directed to enact zoning ordinances that reflect the policy goals of the municipality listed in a statement of community development objectives. Bedminster Township lists these objectives in the Bedminster Township Comprehensive Plan of 1996, which states that Bedminster's planning process is guided by two primary goals: (1) to retain the agricultural and rural character of Bedminster Township—created by rolling farmland, steep slopes, meandering streams and woodland, and a wealth of historic structures; and (2) to provide for the township's fair share of residential and nonresidential growth. The zoning ordinance reflects these goals by setting forth a comprehensive zoning scheme that protects agricultural lands within the township. As stated previously, the zoning ordinance limits development on all tracts larger than 10 acres within the AP district. Development is restricted based on the type of soils contained in a tract. Any plan to subdivide a tract containing protected soils must permanently restrict from development 60 percent of the prime farmland and 50 percent of the farmland of statewide importance and/or farmland of local importance present on the tract. This is a constitutionally valid exercise of the township's police power.

The agricultural preservation provisions of the zoning ordinance are specifically designed "to preserve prime agriculture and farmland considering topography, soil type and classification and present use" as is man-

dated by section 604(3) of the MPC. The soil classifications used by the zoning ordinance to denote farmland worth preserving are the same classifications used by Shrewsbury's ordinance to define its first two categories of protected farmland. Furthermore, like Shrewsbury's ordinance, the zoning ordinance varies the restrictions based on the soil types and on the size of the original tract. Finally, the zoning ordinance clearly accomplishes its stated purpose of preserving farmland, because its implementation results in the creation of large, contiguous tracts of land, free from development pressures, that are economically and geographically suitable for farming.

C&M fails to prove the zoning ordinance's invalidity on every level. The board did not commit an abuse of discretion or an error law in determining that Bedminster is a rural and agricultural township with a vibrant agricultural economy. The board's findings of fact are strongly supported by substantial facts found throughout the record, and these findings evidence the township's need and obligation to preserve farmland. Moreover, C&M fails to show that the zoning ordinance is arbitrary, unreasonable and unrelated to the public health, safety, morals and general welfare. In fact, many of C&M's arguments were contradictory and many of their citations actually supported the township's position, and not their own. Finally, a balancing of the township's interest in agricultural preservation against the restrictions placed on C&M shows that Bedminster's interest in preserving approximately 50 percent of the farmland in the township far outweighs the individual right to develop this land, especially when the zoning ordinance explic-

itly allows for the development of the remaining 50 percent of farmland in the township. Therefore, we hold that Bedminster's agricultural preservation provisions contained within the zoning ordinance are a valid exercise of police power that promotes the public health, safety, welfare and morals, and these provisions are substantially related to the preservation of agricultural lands within the township.

## ONE GOOD ACRE

As stated previously, it is well-established that municipalities can zone for density and that the MPC allows for zoning to protect and preserve natural resources. Since density zoning is a legitimate exercise of police power, such ordinances are not unconstitutional per se. Rather, the constitutionality of these requirements must be determined on a case by case basis because the facts and circumstances vary from case to case. *Honey Brook,* 713 A.2d at 1229-30. The township's "one good acre" requirement is this type of zoning regulation. Under the zoning ordinance, this requirement means that a lot must contain at least one acre free and clear of watercourses, floodplains, floodplain soils, wetlands, lakes or ponds.

As with the AP zoning district, C&M must show that this requirement is arbitrary, unreasonable and unrelated to the public health, safety, morals and general welfare in order for this court to find the requirement unconstitutionally invalid. C&M has failed to do this. The exclusion of watercourses, floodplains, floodplain soils, wetlands, lakes and ponds from being included in the building lot is clearly allowable under section 603(b)(5) of the MPC.

Furthermore, the requirement is not arbitrary or unreasonable because the lot size only increases above one acre when these natural resources exist on the lot and this increase is directly related to the protection of that resource. Finally, this requirement is related to the public health, safety, moral and general welfare, since it protects these natural resources from encroachment, pollution, and contamination, and also, protects the public from flooding and other types of water damage. Therefore, we find that Bedminster's "one good acre" requirement is a valid exercise of police power and is substantially related to the protection of the public health, safety, and general welfare of the township.

## BUILDING ENVELOPE

The zoning ordinance also requires that each lot contain a building envelope that is at least 10,000 sq. ft. We hold that this requirement is constitutional for the same reasons we found the "one good acre" requirement constitutional.

For all the above reasons, we deny C&M's appeal and enter the attached order.

## ORDER

And now, June 30, 2000, the appeal of C&M Developers Inc. is denied and dismissed. The October 18, 1999 decision of the Bedminster Township Zoning Hearing Board is affirmed.