Codorus Township, Appellant *v.* Raymond Rodgers and Arthur Hoover, Appellees.

Argued January 30, 1985, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Gilbert G. Malone, Malone & Neubaum,* for appellant.

*Edward B. Golla,* for appellees.

Opinion by Judge Craig, April 30, 1985:

Codorus Township appeals an order of the Court of Common Pleas of York County which reversed the township zoning hearing board's decision rejecting a constitutional attack on provisions of the township's zoning ordinance dealing with the preservation of agricultural land. We must determine[1] whether the common pleas court properly concluded that the Supreme Court decision in *Hopewell Township Board of Supervisors v. Golla,* 499 Pa. 246, 452 A.2d 1337 (1982) *(Golla),* mandates the invalidation of a zoning provision that precludes division of productive farmland into tracts of less than fifty acres.

In 1952, William and Esther Hoover acquired two contiguous tracts of land in Codorus Township.

---

[1] In a zoning appeal, where the common pleas court has taken no additional evidence, Commonwealth Court's review is limited to a determination of whether the zoning board abused its discretion or committed an error of law. *Solow v. Zoning Hearing Board of Whitehall,* 64 Pa. Commonwealth Ct. 414, 440 A.2d 683 (1982).

Tract 1 consisted of twenty-four acres, and tract 2 contained thirty acres. In 1975, the township adopted its first zoning ordinance. That ordinance provided in section 302 that contiguous tracts owned by the same owner as of December 7, 1974 would be considered a single tract for purposes of the zoning ordinance. Therefore. the Hoovers' two tracts of land constituted one fifty-four-acre tract under the new ordinance.

In 1978, the Hoovers transferred the original thirty-acre tract 2 and a fifty-foot strip of tract 1 to Raymond Rodgers and Arthur Hoover. By letter dated September 25, 1981, the Codorus Township solicitor notified Rodgers and Hoover that their purchase of the thirty-acre tract was in violation of township ordinances. In January, 1982, Rodgers and Hoover filed with the Zoning Hearing Board of Codorus Township a challenge attacking the validity of various sections of the zoning ordinance as unreasonably restrictive, and stating their intention to divide their thirty-one-acre tract into three equal parcels for single-family residence and agricultural purposes.[2]

After two evidentiary hearings, the zoning hearing board rejected Hoover's and Rodgers' challenge and upheld the validity of section 302 (treating contiguous tracts owned by the same owner as a single tract), section 1204 (requiring a $250 filing fee for a petition challenging validity of ordinance), section 504[3] (providing a sliding scale as to single-family dwell-

---

[2] Hoover and Rodgers later decided to subdivide the tract into two parcels of approximately fifteen acres each, which was also prohibited by the ordinance.

[3] Section 504 provides in part:

  504 *Regulations Respecting Single-Family Dwellings*

  1. Single-family dwelling units in the Agricultural District shall be subject to the following limitations:

ings permitted on a tract, based on the acreage of the tract), and section 503[4] (permitting subdivision of

a. There shall be permitted on each tract of land the following number of single-family dwelling units:

| Size of Tract or Land | Number of Single-Family Dwelling Units Permitted |
|---|---|
| 0— 7 acres | 1 |
| 7— 30 acres | 2 |
| 30— 80 acres | 3 |
| 80—130 acres | 4 |
| 130—180 acres | 5 |
| 180—230 acres | 6 |
| 230—280 acres | 7 |
| 280—330 acres | 8 |
| 330—380 acres | 9 |
| 380 acres and over | 10 |

[4] Section 503(a) provides in part:

503 *Subdivision*

a. Lots or parcels shall not be separated from the original tract unless it is determined that:

(1) There is being separated from the original tract no more than one acre for each dwelling unit assigned to the tract being separated excepting this shall not prevent approval of larger dwelling lots where reasonably necessary in order to provide a suitable location for the dwelling, the well, the on-site sewage disposal system, and the driveway; or

(2) The area being separated includes the existing farm buildings and it is necessary to include all of the land shown on the plan in order to include all of the existing farm buildings; or

(3) All of the area of the original "parcel" excepting that approved for inclusion in the tract's quota of dwelling unit lots, is being divided into or among two or more "farms" which will after transfer each contain at least 50 acres. The tracts transferred to a "farm" pursuant to this section shall not subsequently be separated from such farm; or

(4) The original "parcel" contains less than 50 acres and land is proposed to be transferred to another "parcel" which will after such transfer be at least as large as the transferor "parcel" prior to such transfer; . . . .

original tracts only to: (1) utilize the tract's allocation of dwellings under section 504, and limiting those lots to one acre maximum in most cases; (2) divide the tract into parcels with a minimum size of fifty acres; (3) add parcels of less than fifty acres to existing tracts without resulting in an overall loss of farmland in the area).

Upon appeal, the Common Pleas Court of York County, without taking additional evidence, disagreed with the zoning hearing board with regard to section 503 only, based on the court's conclusion that *Golla* required the invalidation of section 503 and any similar provision which requires a minimum lot size of more than ten acres.[5]

The trial judge's opinion soundly noted that his invalidation of a minimum lot size greater than ten acres did not rest upon section 107(21) of the Pennsylvania Municipalities Planning Code (MPC),[6] which exempts from subdivision control the division of land into parcels of more than ten acres for agricultural purposes. In accordance with the views of a plurality of three Justices of the Supreme Court in *Golla,* he concluded that such an exemption with respect to *subdivision control* does not automatically invalidate minimum lot sizes greater than ten acres when adopted under the *zoning* powers conferred by a separate article of the MPC, article VI, 53 P.S. §§10601-10619.[7]

---

[5] The landowners have not cross-appealed the trial court's rulings in agreement with the zoning hearing board, upholding the validity of the $250 filing fee and the validity of section 302.

[6] Act of July 31, 1968, P.L. 805, *as amended,* §107(21), 53 P.S. §10107(21).

[7] In *Golla,* on this point, Chief Justice O'BRIEN and Justice ROBERTS joined the "Opinion of the Court" by Justice FLAHERTY which articulated that view. Justice HUTCHINSON, in a concurring

Nevertheless, the trial court further concluded, from *Golla,* that ten acres had the status of a "magical number," beyond which municipalities cannot go, in setting minimum lot sizes in zoning ordinances.

However, the thrust of the majority holding in *Golla* appears actually to have been directed against the irrational results effected by the specific ordinance provisions in that case.[8] There is no magical number. Instead, as the Supreme Court and we have noted in *Boundary Drive Associates v. Shrewsbury Township Board of Supervisors,* 81 Pa. Commonwealth Ct. 7, 473 A.2d 706 (1984), *affirmed,* Pa. , 491 A.2d 86 (1985), these cases call for a substantive due process analysis to determine whether the challenged provisions are rationally related to the legitimate goal of preserving agricultural land. *See also Martin v. Township of Millcreek,* 50 Pa. Commonwealth Ct. 249, 413 A.2d 764 (1980). That approach requires us to balance the interests of the landowner in the unfettered use of his property against the objectives of the community as a whole in preserving and maximizing the use of productive farmland.

The preservation of land for agricultural purposes is a legitimate zoning objective under section 603(b)(5) of the Pennsylvania Municipalities Planning Code[9] and *Boundary Drive.*

---

opinion, joined by Justice NIX, preferred not to decide the effect of the subdivision control exemption in the MPC. Justice LARSON (concurring and dissenting) and Justice McDERMOTT (dissenting) did not join in the view expressed by the "Opinion of the Court" on this point.

[8] In *Golla,* the concurring views of Justice HUTCHINSON and Justice NIX apparently coincided with those of the Chief Justice, Justice ROBERTS and Justice FLAHERTY, as to that holding.

[9] MPC §603(b)(5), 53 P.S. §10603(b)(5), provides that zoning ordinances may contain:

The present content of the MPC in Pennsylvania reflects a nationwide legislative trend toward using zoning as one of the tools for the preservation of agricultural land. As noted four years ago in Coughlin and Keene, *The Protection of Farm Land: An Analysis of Various State and Local Approaches,* 33 LAND USE LAW & ZONING DIGEST 5, 6-8 (1981), there were then 270 local (county and municipal) agricultual zoning efforts which the authors had identified. Their survey showed that, in addition to rather simplistic ordinances requiring only a substantial minimum lot size (ranging from as little as ten acres to as much as 640 acres), local legislative patterns employed exclusive agricultural use districts and also area-based allocation ordinances—similar to the one before us here—which allow owners to build additional dwellings for each unit of land of a specified area that they own.

As yet, the volume of precedents is small. In *Joyce v. City of Portland.* 24 Or. App. 689, 546 P.2d 1100 (1976), the Court of Appeals of Oregon held that exclusive farm and forest use zoning did not constitute an unconstitutional taking. More to the point, *Gisler v. County of Madera,* 38 Cal. App. 3d 303, 112 Cal. Rptr. 919 (1974), upheld the validity of an ordinance providing for exclusive agricultural zoning with a minimum eighteen-acre parcel size.

The most recent decision on point, nationally speaking, is *Wilson v. County of McHenry,* 92 Ill. App. 3d 997, 416 N.E.2d 426 (1981), in which the Il-

---

Provisions for the protection and preservation of natural resources and agricultural land and activities.

MPC §604(3), 53 P.S. §10604(3), also provides that the provisions of zoning ordinances shall be designed "[t]o preserve prime agriculture and farmland considering topography, soil type and classification and present use."

linois Appellate Court upheld the validity of agricultural zoning, in a county zoning ordinance which set a 160-acre lot area minimum in the agricultural district for the declared objective of promoting the public interest by preserving prime farmland and channeling residential development toward existing urban centers. Although the opinion notes, from the evidence, that such agricultural zoning diminished the market value of the land from $1,440,000 as raw land for residential subdivision development to a value of approximately $500,000 as farmland, the court held that such zoning, in the context of a communitywide comprehensive plan (as here), was neither arbitrary nor unreasonable, in that comparison of the gain to the public against the impact upon the owners would not support a decree invalidating it, and the landowners had not satisfied their burden of proving that the regulation lacked a reasonable relationship to the public health, welfare and safety.

In the record in this case, the zoning hearing board findings include, as a foundation point, the fact that population growth in Codorus Township increased from 10.4% in the 1950's to 15.4% in the 1960's; that the township since 1972 has lost 3200 acres of agricultural land, while the average acreage size of farms in the township has increased from 49.67 acres in 1972 to 53.7 acres at present; that the size of farmland tracts is directly related to the economic viability of farming operations with respect to the use of modern machinery, soil conservation programs and the ability to dispose of agricultural byproducts such as manure and other refuse; and that the soils in the township, which consist mostly of poor Chester soils Class III, require strip cropping or contour farming, diversion terraces and ditches, and provisions to deal with erosion problems—all of which can

be more readily employed on larger agricultural tracts.

Accordingly, the board concluded that the agricultural zoning provisions in the township are reasonable and not arbitrary because they permit a reasonable degree of development within the agricultural zone while preserving and encouraging units which foster sound soil conservation practices and economic vitality.

In support of their claim, the landowners presented their own testimony that they knew a total of five people in the area who were operating profitable farms on less than fifteen acres, and the testimony of one such farmer who grossed $20-$25,000 annually from a chicken-raising operation on two acres of land.

The township offered the testimony of Joseph Hoheneder, the assistant director of the York County Planning Commission, who testified about a statistical study indicating the significant loss in farmland in the county in recent years, and a concurrent increase in population. The township also presented the testimony of John Smith, the York County agricultural agent, who testified that, in his opinion, although small tracts are possible for certain types of farms, it is more economically feasible to operate a farm in York County on tracts in excess of 50 acres, because a greater amount of land is required to use modern farming equipment and methods appropriate to the region's characteristics.

Our review of all of the evidence clearly shows that the record contains substantial evidentiary support for the findings and conclusions of the zoning hearing board. We conclude that the board did not abuse its discretion with respect to those findings and conclusions. Moreover, the board's conclusion was not con-

88

trary to law because the landowners did not meet their burden of proving that the ordinance is invalid. *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975).

The ordinance provisions here involved are rationally related to the legitimate goal of preserving agricultural land in Codorus Township. However, we emphasize that a fifty-acre lot area minimum is not necessarily valid in every situation, whether required for agricultural preservation purposes or otherwise, but must be scrutinized, as here, under a substantive due process analysis in the context in which it is presented.

Accordingly, we reverse.[10]

ORDER

Now, April 30, 1985, the order of the Court of Common Pleas of York County, at 82-S-2343, dated June 20, 1984, is reversed.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

[10] Although the township also argues here that section 504 (sliding scale of dwelling units per tract based on acreage of tract) is constitutionally valid, the common pleas court did not hold it invalid, but rested its decision solely on the invalidity of section 503. Therefore, the constitutionality of section 504, which is similar to the ordinance we upheld in *Boundary*, is not an issue before us.