Arthur T. McGONIGLE, Jr., Appellant

v.

LOWER HEIDELBERG TOWNSHIP ZONING HEARING BOARD, Lower Heidelberg Township, David L. Thun, Barbara B. Thun, Louis Thun Children Real Estate Trust, Cynthia C. Willauer, Noel Karasin, Michael J. Thun, Alexena Frazee, Douglas Eshbach, Elizabeth Eshbach.

Commonwealth Court of Pennsylvania.

Argued March 29, 2004.
Decided Sept. 22, 2004.

Charles E. Zaleski, Camp Hill, for appellant.

Socrates J. Georgeadis, Wyomissing, for appellees.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Arthur T. McGonigle, Jr. (McGonigle) appeals from an order of the Court of Common Pleas of Berks County that affirmed the decision of the Zoning Hearing Board of Lower Heidelberg Township (Board) denying his request for a use variance for the proposed office park in the agricultural preservation zoning district; rejecting his challenge to the validity of the agricultural preservation regulations of the Lower Heidelberg Township Zoning Ordinance (Ordinance); and denying his request for a validity variance. We affirm.

## I.

McGonigle and his family members are the current owners of a 38.5–acre parcel of land (Property) located in Lower Heidelberg Township (Township), Berks County with an 890–foot frontage on State Hill Road, a state highway. The Property was part of a larger parcel purchased by McGonigle's father in 1966 as an investment. McGonigle's father believed that the state would acquire the parcel for a highway project. After the state cancelled the highway project, McGonigle's father sold two small lots, one acre and one half acre, in 1971 and 1972. In 1973, the Township enacted the Zoning Ordinance (Ordinance), under which the remaining 38.5–acre parcel was placed in the A–1 Agricultural Preservation zoning district (A–1 zoning district). After McGonigle's father died, the Property was conveyed in 1981 to Red Wing Management, Inc., of which McGonigle was one of principals. In 1986,

the Property was then conveyed to the current owners. .

Section 152 of the Ordinance permits by right the following uses in the A–1 zoning district: (1) a single-family detached dwelling on a farm and a residential accessory use; (2) an agricultural use conducted on a farm with the minimum 40–acre lot size requirement; (3) display, sale and processing of farm products; and (4) woodland or game preserve, wildlife sanctuary or similar conservation use. Section 153 of the Ordinance also permits by special exception development of detached single-family dwellings in the A–1 zoning district. To develop single-family detached dwellings, the size of the parcel to be subdivided must be at least 40 acres, the size of each lot must be at least one acre, and public or community sewer and water facilities must be available. *Id.*

Since 1966, the Property has been used first as a nursery, known as State Hill Nursery, and then for farming after the death of McGonigle's father. It is undisputed that the Property was held in single and separate ownership at the time of the enactment of the Ordinance in 1973. Therefore, the Property is a preexisting nonconforming lot and may be used as a farm or any other permitted uses despite its noncompliance with the minimum lot size requirements pursuant to Section 518(b) of the Ordinance.[1] In January 2002, McGonigle filed an application for a use variance, proposing to develop the Property as an office park consisting of 138,700 square-foot office buildings and 698 parking spaces.[2] McGonigle also chal-

---

1. Section 518(b) provides that "[a]ny lots held in single and separate ownership on the effective date of this Ordinance which does not meet the minimum area and size requirements of the Zoning District ... may be used for any Use permitted in that district provided that all Yard, height and Open Space requirements are met."

2. The proposed office park is permitted in the C–1 Mixed Commercial, C–2 General Commercial and I–1 General Industrial zoning districts. Sections 227(i), 252(d) and 277(a) of the Ordinance.

lenged the validity of the regulations of the agricultural preservation zoning district under Sections 152 and 153 of the Ordinance and requested a validity variance.

At nine hearings held before the Board, McGonigle, the area property owners (Objectors) and the Township presented the following relevant facts.[3] The Property is a prime farmland containing prime agricultural soil of Duffield Silt Loam and Hagerstown Silt Loam. Approximately 26 acres of the 38.5–acre Property are currently used for crop farming by a tenant farmer. The area to the east, west and south of the Property is within the A–1 zoning district, and the area to the north of the Property across State Hill Road is within the A–R–1 Agricultural Recreation zoning district where cluster single-family development with a golf course is permitted.

Cacoosing Creek located on the east of the Property serves as the actual and natural boundary between the Township and neighboring Spring Township. On the east of the Property, there are a municipal park known as Cacoosing Meadows Recreational Complex, a playground and a quarry owned by Spring Township. On the west, southwest and north of Cacoosing Creek, there are agricultural fields, woodland, hills and scattered residential dwellings. A nursing home and a cluster residential development, known as "Rosewood Hills," are located on the north side of the Property across State Hill Road. The witnesses described the area surrounding the Property as agricultural, residential and recreational.

McGonigle and his expert witnesses testified that the Property is in the path of growth; the location of the Property fronting State Hill Road, a major collector road,

and the availability of the public water and sewer in the vicinity of the Property are growth inducers; and the Property is too small to be farmed profitably and cannot be reasonably used in strict compliance with the Ordinance. The expert witnesses of the Objectors and the Township testified that Cacoosing Creek serves as a natural boundary between the agricultural uses in the Township and the growth and development in Spring Township; the Property is not in the path of growth and could be reasonably used for agricultural purposes or development of 20 to 25 upscale detached single-family dwellings, similar to those in the nearby Rosewood Hills residential development; and, the minimum 40–acre lot size requirement for a farm and the minimum 1–acre lot size requirement for detached single-family dwellings are substantially related to the Township's interest in protecting agricultural lands.

Accepting the testimony presented by the Township and the Objectors and rejecting the conflicting testimony of McGonigle's witnesses, the Board found that the minimum lot size requirements under Sections 152 and 153 of the Ordinance are substantially related to the goal of protecting and preserving agricultural lands; the proposed office park is inconsistent with the Joint Comprehensive Plan adopted by the Township, South Heidelberg Township and the Borough of Wernersville; the Property may be reasonably used in compliance with the Ordinance; and, McGonigle failed to establish unnecessary hardship for granting a variance. The Board noted that McGonigle would be entitled to develop detached single-family dwellings on the Property, if he could obtain public

---

3. The Board's chairman, David L. Thun, owns the adjacent agricultural land. Thun recused himself from the proceeding and presented the evidence in opposition to McGonigle's application.

water and sewer connections. The Board accordingly denied the request for a use variance, rejected the validity challenge and denied the request for a validity variance. On appeal, the trial court affirmed the Board's decision.[4]

## II.

McGonigle first challenges the validity of the minimum 40–acre lot size requirement for a farm under Section 152(c)(1) of the Ordinance and the minimum 1–acre lot size requirement for detached single-family dwellings under Section 153(b)(3) of the Ordinance, asserting that such requirements are arbitrary and unreasonable and have no substantial relationship to preserving agricultural lands.

Property owners have a constitutionally protected right to enjoy their property without governmental interferences. *Surrick v. Zoning Hearing Board of the Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977). The municipality may, however, enact zoning ordinances reasonably restricting the property right to protect and promote the public health, safety and welfare under its police power. *Cleaver v. Board of Adjustment*, 414 Pa. 367, 200 A.2d 408 (1964). A zoning ordinance is presumed to be valid. *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975). Therefore, one challenging the zoning ordinance has the heavy burden of establishing its invalidity. *Id.* Where the validity of the zoning ordinance is debatable, the legislative judgment of the governing body must control. *Bilbar Construction Co. v. Easttown Township Board of*

*Adjustment*, 393 Pa. 62, 141 A.2d 851 (1958).

In Pennsylvania, the constitutionality of the zoning ordinance is reviewed under a substantive due process analysis. *Boundary Drive Assoc. v. Shrewsbury Township Board of Supervisors*, 507 Pa. 481, 491 A.2d 86 (1985). Under such analysis, the party challenging the validity of provisions of the zoning ordinance must establish that they are arbitrary and unreasonable and have no substantial relationship to promoting the public health, safety and welfare. *Shohola Falls Trails End Property Owners Ass'n v. Zoning Hearing Board of Shohola Township*, 679 A.2d 1335 (Pa.Cmwlth. 1996), *appeal denied*, 548 Pa. 651, 695 A.2d 788 (1997).

Preservation of agricultural lands is recognized as a legitimate governmental goal that can be implemented by zoning regulations. *Hopewell Township Board of Supervisors v. Golla*, 499 Pa. 246, 452 A.2d 1337 (1982). Section 603(c)(7) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10603(c)(7), authorizes municipalities to enact zoning ordinances containing "provisions to promote and preserve prime agricultural land. . . ." Section 604(3) of the MPC, 53 P.S. § 10604(3), further provides that the provisions of the zoning ordinances must be designed, *inter alia*, "[t]o preserve prime agricultural and farmland considering topography, soil type and classification, and present use." A significant factor in determining the reasonableness of land

---

**4.** This Court's review in zoning cases, where, as here, the trial court did not take any additional evidence, is limited to determining whether the zoning hearing board committed an error of law or manifest abuse of discretion. *De Cray v. Zoning Hearing Board of Upper Saucon Township*, 143 Pa.Cmwlth. 469,

599 A.2d 286 (1991). The Board abuses its discretion if its findings are not supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

use restrictions is whether the restrictions are consistent with stated purposes of the particular zoning district. *Hock v. Board of Supervisors of Mount Pleasant Township*, 154 Pa.Cmwlth. 101, 622 A.2d 431 (1993).

The Ordinance was enacted, *inter alia*, "[t]o encourage each type of the land Use to be located in areas which are most suitable for each particular land Use" and "[t]o encourage the preservation of the best Farm land within the Township." Section 103(f) and (h). Section 151 of the Ordinance sets forth following legislative findings:

The areas included in this [A–1] district are predominantly Used for Agriculture at the present time and soils mapping has indicated they include very suitable Farm land. Future population growth can be accommodated in other Zoning Districts given their size and permitted densities.

 Zoning for density has been recognized as the legitimate exercise of the police power to preserve the farmlands. *National Land & Investment Co. v. Easttown Township Board of Adjustment*, 419 Pa. 504, 215 A.2d 597 (1965). Any minimum acreage requirement is not unconstitutional per se; rather, its constitutionality must be determined on a case-by-case basis under a different set of facts and circumstances. *Id.* In determining the constitutionality of the minimum lot size requirement for the agricultural preservation zoning district, the landowner's interest in the unfettered use of his or her property must be balanced against the objectives of the community as a whole in preserving and maximizing productive farmlands. *Codorus Township v. Rodgers*, 89 Pa.Cmwlth. 79, 492 A.2d 73 (1985).

To support his contention that the minimum lot size requirements in question are invalid, McGonigle relies on *C & M Devel-*opers, Inc. v. Bedminster Township Zoning Hearing Board*, 573 Pa. 2, 820 A.2d 143 (2002). In *C & M*, the zoning ordinance required the landowners of the tracts larger than 10 acres in the agricultural preservation zoning district to set aside 60% of prime farmlands and 50% of other farmlands as a non-buildable area. To develop single-family dwellings, the landowners were additionally required to create "one clear acre" which could not include floodplains, floodplain soils, wetlands, lakes, ponds or watercourses. The effect of these restrictions was to reduce the development potential of the 200–acre tract in question from 161 lots each consisting of 10,000 square feet to 51 lots each consisting of 3 acres.

The Supreme Court concluded that the 50 to 60% set-aside requirement for the agriculturally productive tracts is reasonably related to the Township's legitimate interest in preserving its agricultural lands. The Court further concluded, however, that by additionally limiting the development of homes only on one-acre buildable lots, the Township was no longer attempting to preserve agricultural lands, but was instead unreasonably restricting the landowner's property rights. As the Court subsequently explained, the regulatory scheme in *C & M* was rendered invalid because the combined effect of the 50 to 60% set-aside requirement and the one-clear-acre requirement reduced the development potential "without justification of providing greater protection to agricultural lands or activities." *In re Petition of Dolington Land Group*, 576 Pa. 519, 543, 839 A.2d 1021, 1036 (2003).

Initially, we note that McGonigle is not seeking to develop single-family dwellings on the property, as in *C & M*. Because the Property is a preexisting nonconforming parcel, he may develop the Property for single-family dwellings despite its noncom-

pliance with the minimum 40–acre lot size requirement, if other requirements are met. The holding in *C & M* addressing the validity of the minimum lot size requirements is therefore inapplicable to this matter.

Moreover, the minimum lot size requirements under Sections 152(c)(1) and 153(b)(3) reasonably balance the landowner's property right against the Township's interest in preserving its prime agricultural lands.

In *Rodgers,* the owners of the 30–acre tract in the agricultural zoning district challenged the validity of the minimum 50–acre lot size requirement. This Court upheld the validity of the minimum lot size requirement, concluding that the testimony of the township's witness that it was economically more feasible to operate a farm on a tract in excess of 50 acres using modern farming equipment and methods appropriate to the region's characteristics supported the validity of such requirement. In *Kirk v. Zoning Hearing Board of Honey Brook Township,* 713 A.2d 1226 (Pa.Cmwlth.1998), *appeal denied,* 558 Pa. 624, 737 A.2d 745 (1999), this Court also held that the minimum one acre or one and one half acre lot size requirement imposed for single-family dwellings in the agricultural zoning district, depending on the availability of the public water and sewer, constituted a valid zoning for density intended to promote the township's interest in preserving the prime agricultural lands.[5]

In this matter, the Board accepted the testimony of the Township's land use planning expert, Stanford M. Lembeck, Ph.D., that the 40–acre minimum lot size requirement protects the Township's agricultural lands by preventing them from being subdivided into lots that are too small for farming and that the minimum 1–acre lot size requirement for development of single-family dwellings would have a very limited application and reasonably balances the landowners' property interests in developing their lands against the Township's interest in preserving its prime farmlands. As in *Rodgers* and *Kirk,* the evidence accepted by the Board as credible supports the Board's conclusion that the minimum lot size requirements under Sections 152(c)(1) and 153(b)(3) are reasonable and substantially related to the Township's interest in preserving its prime farmlands.[6]

### III.

■ McGonigle next contends that the agricultural preservation zoning regulations, as applied to the Property, are *de facto* exclusionary and therefore invalid.

■ In determining whether the zoning ordinance is *de facto* exclusionary, the three-prong test is applied: (1) whether the community in question is a logical area for population growth and development; (2) if the community is in the path of growth, the present level of development; and (3) if the community is in the

---

**5.** The courts have invalidated the substantially larger minimum lot size requirements for the *residential* zoning districts. *See, e.g., National Land* (four acres); *Berman v. Board of Commissioners of the Township of Lower Merion,* 147 Pa.Cmwlth. 405, 608 A.2d 585 (1992) (two acres); and *Mill Valley Assoc. v. Zoning Hearing Board of Tredyffrin Township,* 126 Pa.Cmwlth. 340, 559 A.2d 985 (1989), *appeal denied,* 527 Pa. 656, 659, 593 A.2d 427, 429 (1990) (two and one-thirds acres). *See also Martin v. Township of Millcreek,* 50 Pa.

Cmwlth. 249, 413 A.2d 764 (1980) (the minimum ten-acre requirement for a single-family residence in the Ecologically Sensitive District was held invalid).

**6.** In a zoning proceeding, the zoning hearing board is the sole judge of credibility with the power to resolve conflicting testimony. *Nettleton v. Zoning Board of Adjustment of the City Pittsburgh,* 574 Pa. 45, 828 A.2d 1033 (2003).

path of growth but is not already highly developed, whether the ordinance has the practical effect of unlawfully excluding the legitimate use in question. *Surrick; Overstreet v. Zoning Hearing Board of Schuylkill Township*, 152 Pa.Cmwlth. 90, 618 A.2d 1108 (1992). The following factors should be considered in determining whether a community is the logical area for population growth and development: (1) projected population growth; (2) anticipated economic development; (3) access by major roads or public transportation; (4) the growth and development of neighboring municipalities; (5) proximity to a large metropolitan area; and (6) attempts by developers to obtain permission to build. *Heritage Building Group, Inc. v. Bedminster Township Board of Supervisors*, 742 A.2d 708 (Pa.Cmwlth.1999), *appeal denied*, 563 Pa. 667, 759 A.2d 389 (2000).

As the Board found, the Property is surrounded by the agricultural, residential and recreational uses. It is undisputed that the Property has been used for a nursery and crop farming since 1966 and can also be used for any other agricultural uses,[7] and display, sale and processing of farm products. The aerial photographs showed that the commercial development and industrial growth stopped at Van Reed Road in Spring Township, about one half to three quarters mile east of the Property. The Joint Comprehensive Plan and the Berks Vision 2020 Plan designate the area of the Property as an agricultural preservation area, not a future growth area. Commercial development is recommended along the Route 422 corridor about two miles from the Property and in the villages of the Township.

When asked if the commercial development in Spring Township would extend westward into the Township, the Township's real estate appraiser, Douglas A. Haring, testified:

> Commercial development is very sensitive, and I think the natural boundary coming—traveling west along State Hill Road from Van Reed, you have natural buffers. You have the Cacoosing Creek. You have the boundary between the two townships which many times can result in a separation of land uses just because townships don't have necessarily the same zoning on each side of the line.... You also have the green space of the Breneman quarry, which is now township owned, and you have the playground, the park. Those are two large breaks, I think, in a growth pattern.

September 24, 2002 Hearing, N.T., p. 88. Haring also disagreed with the testimony of McGonigle's experts that the 890–foot frontage of the Property on State Hill Road and the possibility of public water and sewer connections in the area are growth inducers. Haring opined that the existence of such collector road does not in and of itself encourage or discourage development and that public water and sewer connections to the Property would not be guaranteed.

The record thus supports the Board's finding that the Property is not a logical area for growth and development and is not in the path of growth. Hence, McGonigle failed to meet his burden of establishing that the agricultural preservation zoning regulations, as applied to the Property, are *de facto* exclusionary.

### IV.

▮ Relying on the Township's previous rezoning of the Rosewood Hill parcel

---

7. Section 106(d) of the Ordinance defines the term "agriculture" as "[t]he cultivation of the soil and the raising and harvesting of the products of the soil, including but not limited to, nursery, horticulture and forestry and animal husbandry."

from the A–1 zoning district to the A–R–1 zoning district, McGonigle further contends that the application of the A–1 zoning restrictions to the Property is discriminatory and constitutes an unlawful spot zoning.

Admittedly, however, McGonigle has never sought to rezone the Property to the A–R–1 or other zoning district for the proposed office park or other use. Therefore, McGonigle may not claim that he was subject to discriminatory treatment by the Township in its rezoning decisions. Moreover, the Board indicated that he would be permitted to develop the Property for single-family dwellings, similar to those in the Rosewood Hills residential development, if he can obtain public water and sewer connections.

█ Nor do the facts support his claim of a spot zoning. A traditional spot zoning is described as singling out of a small lot for different treatment from that accorded to neighboring lands, indistinguishable in character, for the economic benefit or detriment of the owner of the lot. *Sharp v. Zoning Hearing Board of the Township of Radnor,* 157 Pa.Cmwlth. 50, 628 A.2d 1223 (1993), *appeal denied,* 536 Pa. 629, 637 A.2d 290 (1993). In this matter, however, McGonigle's claim is related to the rezoning of the neighboring Rosewood Hills parcel, not his own property. It appears, therefore, that he is claiming a "reverse spot zoning," *i.e.,* rezoning of the surrounding lands making the tract in question an "island" of a different zoning although there are no differences in character from the neighboring properties. *In re Realen Valley Forge Greenes Assoc.,* 576 Pa. 115, 838 A.2d 718 (2003).

As the Board found, the surrounding properties are used for the agricultural, residential and recreational purposes. The area to the east, west and south sides

of the Property are all zoned agricultural preservation. Only the Rosewood Hills parcel on the north side of the Property was rezoned from agricultural preservation to agricultural recreation. Thus, the facts simply do not establish that the Property is surrounded by different zoning districts supporting McGonigle's claim of a spot zoning.

## V.

█ Finally, McGonigle contends that he is entitled to a validity variance because the application of the A–1 zoning restrictions results in confiscation of the Property.

█ In order to obtain a validity variance, the applicant must establish that the effect of the regulations complained of is unique to the applicant's property and that the regulations deprive the applicant of the use of the property. *Chrin Bros. v. Williams Township Zoning Hearing Board,* 815 A.2d 1179 (Pa.Cmwlth.2003). The zoning ordinance cannot be declared invalid merely because it may deprive the owner of most lucrative and profitable uses. *Tidewater Oil Co. v. Poore,* 395 Pa. 89, 149 A.2d 636 (1959). To establish the confiscatory nature of the zoning regulations, the applicant must prove that the regulations have rendered the land in question to have no value or only distress value. *Id.*

The Property is a prime agricultural land and is currently used for the agricultural purpose. The soil analysis conducted by McGonigle's agronomist and agricultural consultant in 1992 showed the Property had crop yield potential of 150 bushels of field corn, 6 tons of alfalfa, 60 bushels of wheat, 75 bushels of barley, 30 bushels of soybeans, and 6 tons of hay. The adjacent property owner, David Thun, testified that 631 acres of the neighboring tracts owned

by his family members were also used for agricultural purposes. Mark Garber, a tenant crop farmer, who farms 850 acres including 26 acres of the Property, testified that one could support himself or herself by farming the Property alone.

Further, the Ordinance permits by right other agricultural uses, such as horticulture, forestry and animal husbandry, and display, sale and processing of farm produces in the A–1 zoning district. McGonigle's expert conceded that poultry and vegetable farms may be operated profitably on less than 30 acres. McGonigle would be also permitted to develop the Property for 20 to 25 upscale detached single-family dwellings.

The overwhelming evidence in the record thus establishes that the effect of the agricultural preservation zoning regulations are not unique to the Property and that the Property may be reasonably used in compliance with the zoning restrictions. Therefore, McGonigle is not entitled to a validity variance.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 22nd day of September, 2004, the order of the Court of Common Pleas of Berks County in the above-captioned matter is affirmed.