**ETHAN–MICHAEL, INC., Appellant**

v.

**BOARD OF SUPERVISORS OF UNION TOWNSHIP, Berks County, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2006.
Decided March 8, 2007.

Daniel P. Becker, Wyomissing, for appellant.

Josele Cleary, Lancaster, for appellee.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge and LEADBETTER, Judge.

OPINION BY Judge SMITH–RIBNER.

Ethan–Michael, Inc. (EMI) appeals from the order of the Court of Common Pleas of Berks County affirming the decision of an appointed Hearing Officer that determined that certain provisions of the Union Township Zoning Ordinance were unconstitutional and invalidated and severed them but otherwise upheld the ordinance against a substantive validity challenge with a proposed curative amendment. EMI questions whether restrictions in the zoning ordinance fail to serve the stated purpose of protection of agriculture and unreasonably restrict the right of EMI to use its property and whether exclusionary intent of a township is relevant in the determination of exclusionary zoning.

I

Louis J. Mascaro is sole shareholder of EMI and of Sophia Ariana, Inc. He and the two companies (collectively, EMI) now own six contiguous parcels of property along Route 724 in the Township, which include about 518 acres located south of the road in the AP–Agricultural Preservation District pursuant to the Ordinance enacted May 15, 1995 (the Tract), as well as 150 acres to the north. Route 724 is a two-lane road, subject to flooding, that runs near the Schuylkill River, which forms the northern border of the Township. Mascaro purchased approximately

132 acres of the Tract in 1993 and 1994. After enactment of the Ordinance the companies purchased the rest.

EMI initially filed a substantive challenge to the Ordinance with a proposed curative amendment in March 2003 pursuant to Section 609.1(a) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* added by Section 10 of the Act of June 1, 1972, P.L. 333, 53 P.S. § 10609.1(a). EMI's proposal at that time was for a hog farm or for 388 single-family detached dwellings. The Board of Supervisors (Board) appointed a retired federal court judge, Edward N. Cahn, as the Hearing Officer pursuant to Section 908(2) of the MPC, 53 P.S. § 10908(2), and the parties agreed to accept his decision as the final decision of the Board subject to appeal to the Court of Common Pleas.

An effort at mediation was not successful, and EMI filed an amended challenge in November 2004 seeking approval for 388 single-family detached dwellings on one-acre lots, which was not possible under the AP zoning. EMI challenged the Ordinance provisions as de facto and de jure exclusionary, unreasonable, arbitrary and not substantially related to the police power purpose they purport to serve. The proposed curative amendment was to eliminate Section 905.3 in its entirety and to eliminate the reference to Section 905.3 in Section 401.2. After further hearings from December 2004 to August 2005, the Hearing Officer issued his decision January 23, 2006. The Hearing Officer quoted Section 401 "AP AGRICULTURAL PRESERVATION DISTRICT"[1] and Sec-

---

1. Section 401.1, "Purpose" of the Agricultural Preservation District, provides:

 The presence of active and productive agricultural lands is a major land resource for any municipality. Union Township has a significant supply of this valuable resource.

 The purpose of the AP District is to preserve the active and productive agricultural lands that are present within the Township. Residential land development activity should be limited within the AP District in order to preserve the large contiguous tracts of agri-

tion 905.3 "Development Permitted within AP Zoning District."[2]

In view of the de facto exclusion challenge under *Surrick v. Zoning Hearing Board of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1977), the Hearing Officer made detailed findings concerning surrounding communities and population trends. He further found that the site in question is essentially rural. It is current-

ly being farmed, and it has been farmed and used in agriculture for more than thirty years. Approximately 90 percent of the site has Class II prime agricultural soils. There are approximately 5400 acres of prime agricultural soils in the Township; 1234 of those are zoned AP, and the Tract comprises over 40 percent of that. Current crop yields run from above average to below average. The Hearing Officer rejected claims of exclusion.[3]

cultural land area within the Township. The goals, objectives and planning policies for agricultural preservation are further outlined within the Union Township Comprehensive Plan Update (1994).

Section 401.2, "Uses Permitted by Right," includes general agricultural uses subject to Section 905.1 of the Ordinance, intensive agricultural uses subject to Section 905.2, "C. Single Family Detached Dwelling, subject to Section 905.3 of this Ordinance[,]" municipal use, and woodland or game preserve or wildlife sanctuary or similar conservation use. Section 401.3, "Uses Permitted by Conditional Use," includes, when granted by the Board under Article XI, home occupation, nursery/greenhouse, golf driving range and accessory uses on the same lot. Section 401.4, "Uses Permitted by Special Exception," when granted by the Zoning Hearing Board, includes public cemetery, pet cemetery, commercial campgrounds subject to Section 930, public utility use subject to Section 929, recreation uses subject to Section 906 and accessory uses.

**2.** Section 905.3 provides in pertinent part:

B. Contiguous tracts of land owned under single or separate deeds at the adoption of the Union Township Zoning Ordinance of 1994 shall be limited to the maximum additional single family detached dwellings: [The size of the original tract and the maximum additional dwelling units are: 5 to 19 acres, 2 units; 20 to 49 acres, 3 units; 50 to 99 acres, 4 units; 100 to 149 acres, 5 units; 150 to 199 acres, 6 units; 200 to 299 acres, 7 units; 300 to 399 acres, 8 units; 400 to 499 acres, 9 units; and 500 or more acres, 10 units.]

. . . .

E. A minimum of 75 percent of the total land area for all new single family residential lots shall not be consumed by soils with

Capability Units of Class I and II, as defined by the Soils Survey of Berks County, prepared by the United States Department of Agriculture in cooperation with the Pennsylvania State University and the Pennsylvania Department of Agriculture.

F. All new single family residential lots and dwellings shall be located along an existing public street.

. . . .

I. The Union Township Board of Supervisors may permit the additional single family residential lots, if the land owner can demonstrate that two (2) of the following conditions exist: [1. a minimum of 50 percent of the total land area proposed for development is consumed by soils with Capability Units of Class IV through VIII; 2. the tract of land is unsuitable for agricultural land uses based on the geological, topographical and/or hydrological conditions of the site; 3. the site is unsuitable for agricultural land uses based on the configuration and/or size of the tract of land; and 4. the proposed development will not create a conflict with the goals, objectives and policies identified within the Union Township Comprehensive Plan Update].

**3.** The Hearing Officer examined the *Surrick* exclusionary zoning challenge under *McGonigle v. Lower Heidelberg Township Zoning Hearing Board*, 858 A.2d 663 (Pa.Cmwlth. 2004), which sets forth the three-prong test for determining if an ordinance is de facto exclusionary. He determined that the Township is not in the path of growth; nevertheless, he also determined that it is not already highly developed but that the land available for residential use could accommodate the population increase projected by EMI's expert. Further, there was no showing of de jure total exclusion of a proposed use. Hence, there was no exclusion.

The second overall issue presented was whether the restrictions contained in the Ordinance failed to serve the stated police power purpose of protection of agriculture and unreasonably restricted EMI's use of its property. The Hearing Officer quoted *Boundary Drive Assocs. v. Shrewsbury Township Board of Supervisors*, 507 Pa. 481, 489–490, 491 A.2d 86, 90 (1985), for the standard:

> A zoning ordinance is a valid exercise of the police power when it promotes public health, safety or welfare and its regulations are substantially related to the purpose the ordinance purports to serve. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Miller & Son Paving, Inc. v. Wrightstown Township*, 499 Pa. [80] at 88, 451 A.2d [1002] at 1006 [(1982)]. In applying that formulation, Pennsylvania courts use a substantive due process analysis which requires a reviewing court to balance the public interest served by the zoning ordinance against the confiscatory or exclusionary impact of regulation on individual rights. Hopewell [*Township Board of Supervisors v. Golla*, 499 Pa. 246, 452 A.2d 1337 (1982)], *supra.* See *Appeal of Kit–Mar Builders, Inc.*, 439 Pa. 466, 268 A.2d 765 (1970). The party challenging the constitutionality of certain zoning provisions must establish that they are arbitrary, unreasonable and unrelated to the public health, safety, morals and general welfare. Where their validity is debatable, the legislature's judgment must control. *Schubach v. Silver*, 461 Pa. [366] at 381, 336 A.2d [328] at 335; *Bilbar Construction Co. v. Board of Adjustment*, 393 Pa. 62, 71–72, 141 A.2d 851, 856 (1958).

The Hearing Officer first considered EMI's argument that the Ordinance did not foster the purpose set forth in the Berks County Comprehensive Plan and Section 401.1 of the Ordinance of preserving active and productive agricultural lands because only 1234 acres of a total of 5400 acres of prime agricultural soils are zoned AP. Regarding prime soils areas in the Geigertown area at the western end of the Township, which were not zoned AP, the Hearing Officer noted that according to Figure 11 of the Southern Berks Regional Comprehensive Plan, agricultural land in the Geigertown area is being used for residential subdivisions, and tracts are smaller in size and not contiguous. In view of the purpose stated in Section 401.1 of the Ordinance to preserve "large contiguous tracts of agricultural land within the Township," the Hearing Officer concluded that the legislative judgment did not violate substantive due process and that the Ordinance passed muster, based on balancing the rights of EMI to be free of undue restrictions on its use of property against the public policy of the state, county and Township to encourage active farming on large contiguous tracts.

The Hearing Officer next addressed EMI's claim that uses permitted as conditional uses or by special exception, including public cemetery, pet cemetery, commercial campground, public utility and recreation uses, are inconsistent with the purported purpose of preserving existing agricultural lands. The Township admitted that its Ordinance was not perfect but stated that the Board and the Zoning Hearing Board would monitor such uses (which had not as yet been approved). The Hearing Officer decided that any inconsistency was not fatal.

The third argument was that the Township had a specific intent to harm Mascaro when it enacted the Ordinance in May of 1995. The Hearing Officer rejected this contention. He noted that EMI owned only 132 acres at the time of enactment; 386 acres were purchased thereafter with

full knowledge of the zoning. Also, he cited the principle that legislative intent in a zoning case is generally irrelevant. In *Appeal of Apgar from Board of Manheim Township*, 661 A.2d 445 (Pa.Cmwlth.1995), this Court stated that the state of mind of the legislative body in enacting a zoning ordinance is irrelevant to a determination of its validity; it must stand or fall on its own terms, and even strenuous lobbying by supporters of an amendment does not render the amendment special legislation.

EMI argued that some restrictions in Section 905.3 of the Ordinance were too onerous. Although it conceded that the sliding scale in Subsection B was valid, it contended that Subsections E, F and I construed in combination with the sliding scale made it impossible to provide any single-family residence within the 518–acre Tract. The Hearing Officer determined that the provisions of Subsections E, F and I were far more restrictive than necessary to accomplish the stated purpose of the Ordinance, and he declared those provisions to be violative of substantive due process considerations. Therefore, the Hearing Officer considered whether he should sever the violative provisions or whether he should approve the proposed curative amendment in its entirety.

 The Hearing Officer noted that unconstitutional provisions should be severed from their constitutional counterparts unless it is determined that the valid provisions are "so essentially and inseparably

connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one" or that "the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with legislative intent." *Commonwealth v. Mockaitis*, 575 Pa. 5, 28–29, 834 A.2d 488, 502 (2003). Further, the Ordinance expressly authorizes severability in Section 108, providing that if any article, section, subsection, paragraph, clause, phrase or provision of the Ordinance be declared invalid by a court of competent jurisdiction, such judgment should not affect the validity of the Ordinance as a whole or any other part thereof. The Hearing Officer granted the validity challenge to the extent of invalidating Subsections E, F and I of Section 905.3 and severing them, but he denied all remaining requests. The trial court took no additional evidence and it affirmed.[4]

## II

EMI first renews its contention that the applicable restrictions contained in the Ordinance of 1995, as amended, do not serve the stated police power purpose of protection of agriculture and unreasonably restrict the right of EMI to use its property.[5] The Court has held: "A significant factor in determining the reasonableness of a land use restriction is whether the

**4.** In a land use appeal where the trial court took no additional evidence, this Court's review is limited to determining whether the municipal body abused its discretion or committed an error of law. *Finn v. Zoning Hearing Board of Beaver Borough*, 869 A.2d 1124 (Pa.Cmwlth.2005). The Court need not address EMI's response to the trial court's criticism of its framing of issues.

**5.** EMI acknowledges in its *Brief for Appellant*, p. 4 n1, that although it disagreed with

the Hearing Officer's decision on the "fair share" issue, it did not pursue that issue on appeal to the trial court. Therefore, although EMI continues to argue that "exclusionary intent" is relevant to the issues in this case, it is not arguing de facto exclusion under *Surrick* by failure to provide a fair share of single-family detached dwellings, and of course there is no question of de jure total exclusion of single-family detached dwellings from the Township.

restriction is consistent with the stated purpose of the particular zoning district." *Hock v. Board of Supervisors of Mount Pleasant Township,* 154 Pa.Cmwlth. 101, 107, 622 A.2d 431, 434 (1993). In *Hock* the Court invalidated a large minimum lot size applicable only to single-family homes in an open space district, which was justified in part as a means of preserving agricultural land, where the provision made no mention of agriculture and appeared to be simply an attempt to maintain a rural character.

■ The substantive due process analysis requires courts to engage in a meaningful inquiry into the reasonableness of a land use restriction in light of the deprivation of an owner's freedom thereby incurred. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board,* 573 Pa. 2, 820 A.2d 143 (2002). In *C & M* owners of more than ten acres in an agricultural preservation zone were required to set aside 60 percent of prime farmlands and 50 percent of other farmlands and to create one acre clear of floodplains and wetlands, among other things, in order to develop each single-family dwelling. The farmlands set aside was deemed legitimate, but the further restrictions did not serve that purpose and were based only on a sense that one acre seemed like a good number and were seen to have the exclusionary purpose of precluding larger homes on smaller lots.

■ EMI stresses that Sections 401.2, 401.3 and 401.4 permit as of right, by special exception or as a conditional use various uses that it contends are not in keeping with the stated purpose of preserving agriculture. It maintains that such uses will consume the prime agricultural land. EMI disputes the Hearing Officer's statement that the uses would be "monitored" by the Board and the Zoning Hearing Board, noting that if an applicant

meets the conditions of the ordinance then he or she is entitled to approval as of right. *Appeal of Baker,* 19 Pa.Cmwlth. 163, 339 A.2d 131 (1975). Although a municipal body may attach reasonable conditions in approving a conditional use or a special exception, they must not be so onerous as to preclude the use, and broad policy statements may not form the basis for such conditions. In *LTS Dev., Inc. v. Middle Smithfield Township Board of Supervisors,* 862 A.2d 686 (Pa.Cmwlth.2004), this Court affirmed the striking of conditions attached to the approval of a planned residential development permitted as a conditional use, noting that by permitting a conditional use the governing body has determined that the use would not harm the neighborhood under normal circumstances.

EMI also contends that lands adjacent to the river have the highest yields and are most suitable for agricultural use, but they are zoned in non-agricultural classifications. A witness for the Township expressed his view that the best agricultural land in the Township is not in the AP District. Charles L. Guttenplan testified for EMI that 85 percent of Township land containing prime soils is in other classifications. Two persons who farm part of the Tract testified that the land closest to the river is the best on the Tract; the land along the river, however, is zoned Highway Commercial. Other land in the Geigertown area containing prime soils is zoned Low Density Residential and Village Commercial. EMI contends that the AP District therefore does not serve its purported police power purpose of preserving agricultural land.

■ As for severing Subsections E, F and I of Section 905.3, EMI asserts that the provisions are properly read together and are not severable. In *C & M* the Supreme Court stated that the restrictions

placed by the ordinance on a landowner of a tract containing greater than ten acres in an AP district must be looked at as a whole. In addition, EMI states, the principle of statutory construction stated in 1 Pa.C.S. § 1932 applies here, namely, that statutes are in pari materia when they relate to the same persons or things or classes of persons or things and that such statutes should be construed together, if possible, as one statute. Severability is possible only where there is legislative intent of severability and the portion left after severance is complete in itself. *Pennsylvania Independent Waste Haulers Ass'n v. Township of Lower Merion*, 872 A.2d 224 (Pa.Cmwlth.2005).

Separately, EMI asserts that the intent of the Board is relevant in the determination of exclusionary zoning. EMI cites *Kelly v. Zoning Hearing Board of Upper Moreland Township*, 87 Pa.Cmwlth. 534, 487 A.2d 1043, 1045 (1985) (quoting *Surrick*, 476 Pa. at 192, 382 A.2d at 110): "[T]he reviewing court must consider whether the 'challenged zoning scheme effect[ed] an exclusionary result or, alternatively, whether there was evidence of a "primary purpose" or exclusionary intent to zone out the natural growth of population.'" EMI acknowledges that *Surrick* "de-emphasized" exclusionary intent, but EMI points out, however, that in *C & M* the Supreme Court stated that an ordinance that has an exclusionary result or purpose cannot be substantially related to the general welfare. It notes that *Appeal of Apgar* concerned whether an amendatory ordinance amounted to special legislation, and it urges the Court to consider the disproportionate amount of EMI land in the AP District, allegations of hostility to EMI's development plans and the extreme restrictions resulting in an illusory right to develop.

The Board in response refers first to the presumption of validity of zoning ordinances and to statements of the principle that even if the validity is fairly debatable, the legislative judgment is allowed to control. *Schubach.* A zoning ordinance is not invalid simply because the supervisors might have made a better choice in the location of a district boundary. *Kirk v. Zoning Hearing Board of Honey Brook Township*, 713 A.2d 1226 (Pa.Cmwlth. 1998). The Board stresses the Hearing Officer's determination that the Ordinance is not exclusionary and that it meets "fair share" requirements, which EMI concedes it did not appeal. Moreover, EMI purchased the great majority of the Tract after it was classified AP in 1995. In any event, it has been held that the exercise of judgment in regard to zoning regulations will not be interfered with except where there is obviously no relation to health, safety, morals or general welfare. *Gladwyne Colony, Inc. v. Township of Lower Merion*, 409 Pa. 441, 187 A.2d 549 (1963).

The Board insists that the classification of the Tract as AP is valid in all respects. Preservation of agricultural lands and activity is a legitimate state interest that is recognized and required by the MPC. *See* Section 603(h), 53 P.S. § 10603(h), and Section 604(3), 53 P.S. § 10604(3). The Board followed that mandate and, after careful study, established the AP District in 1995. The Court has stated that arguments that such a district is invalid because some areas with prime soils are not included are tantamount to challenging the designation of zoning boundaries and that the courts cannot become involved in such general review without improperly assuming almost the entire legislative function. *Kirk.* On the substantive due process issue, the Board quotes *Crystal Forest Assocs., LP v. Buckingham Township Supervisors*, 872 A.2d 206, 216 (Pa.Cmwlth.

2005), *appeal denied,* 586 Pa. 760, 895 A.2d 551 (2006): "[T]he zoning ordinance is considered constitutional as a valid exercise of police power, when it … is substantially related to the purpose it purports to serve."

The Board next maintains that the Hearing Officer correctly determined that Subsections E, F, and I of Section 905.3 are severable and that EMI is not entitled to definitive relief. The Board notes that the doctrine of in pari materia applies to the construction of separate and distinct statutes, not to subsections within a single statute or ordinance. In *H.R. Miller Co., Inc. v. Board of Supervisors of Lancaster Township,* 529 Pa. 478, 605 A.2d 321 (1992), the court stated that if the zoning ordinance can be saved from unconstitutionality by severance of an offending provision and the remainder is constitutional, the landowner, having only partially succeeded, is not entitled to proceed with his proposal as a reward for pursuing the litigation.

■ The Court agrees that EMI's assertions regarding intent are unavailing. EMI concedes that it has not appealed the determination that there was no intent to de facto exclude a fair share of any type of housing from the Township under a *Surrick* analysis. EMI incorrectly attempts to apply the law relating to efforts to exclude one or more categories of housing, either de facto or de jure, to EMI's allegations of hostility by the Board toward Mascaro. Further, as the Hearing Officer stressed, any claim of intent is undercut by the fact that most of the land at issue was rezoned AP before EMI's purchase. The Board notes that the record in this case includes a letter that Mascaro wrote to a supervisor in 1993, Ex. TR–21, R.R. 199a, stating that he intended to preserve the farm for the foreseeable future. It was this land, plus adjacent large contiguous tracts containing prime soils, that was zoned AP in 1995. Enactment of the Ordinance shows intent to limit residential development in the district; it does not show hostility toward Mascaro.

■ The more significant issue in this case is EMI's claim that the AP District does not serve the stated purpose of preserving large contiguous tracts of productive farmland. Preservation of agricultural land is recognized as a legitimate governmental goal, which may be implemented through zoning regulation. *Boundary Drive Assocs.*; *Kirk.* The MPC authorizes municipalities to enact zoning ordinances regulating the protection and preservation of prime agricultural land and activities, Section 603(b)(5), 53 P.S. § 10603(b)(5), and further provides that zoning ordinances shall be designed "[t]o preserve prime agriculture and farmland considering topography, soil type and classification, and present use." Section 604(3). The district has a very high percentage of prime soils, and the fact that other areas with prime soils were deemed to be more suitable for commercial or residential uses does not invalidate the choice made.[6] *Kirk.* Courts may not assume the legislative function of specifying which areas of prime soils should be included in an agricultural preservation district. *Id.* The Court has stated: " 'While the supervisors might have made a better choice in location, the choice was theirs to make and the remedy for any such error is not with the courts, but rather the ballot box.' " *Id.,* 713 A.2d at 1230–1231 (quoting *Ap-*

6. The Board points out that EMI's continued assertion that its witness established that 85 percent of prime soils areas are not in the AP District does not mathematically square with the Hearing Officer's findings that 1234 acres out of a total of 5400 acres of prime soils were zoned AP, which equals 22.85 percent or 77.15 percent not included.

*peal of Langmaid Lane Homeowners Ass'n*, 77 Pa.Cmwlth. 53, 58–59, 465 A.2d 72, 75 (1983)).

In this case the stated purpose of the Ordinance was to preserve prime agricultural soils, and the Ordinance accomplished that purpose. The fact that some non-agricultural uses may be permitted, with appropriate conditions imposed as needed, does not fatally undercut the substantial relation of the Ordinance to its stated goal. The Ordinance is a valid exercise of police power as it is substantially related to the purpose that it purports to serve. *Crystal Forest Assocs., LP.*

After its examination of the record and applicable authority, the Court concludes that the Hearing Officer correctly decided the issue of severability. Severability is preferred. *H.R. Miller Co., Inc.*; *Pennsylvania Independent Waste Haulers Ass'n.* The Court rejects EMI's effort to dismiss Section 108 of the Ordinance as a "generic ordinance severability clause"; Section 108 expressly provides for severability. EMI claimed, and the Hearing Officer found, that the restrictions in Subsections E, F and I of Section 905.3 prevented EMI from developing any of the

lots permitted under the sliding scale of Subsection B. With the striking of those provisions, impediments to such development are removed.[7] In contrast, the definitive relief sought by EMI of approval of its proposal for construction of 388 single-family houses would permanently remove the Tract from any possibility of productive agricultural use.

The Court concludes that the Hearing Officer committed no error in his decision to invalidate and to sever Subsections E, F and I of Section 905.3 but otherwise to sustain the Ordinance and to deny the curative amendment requested by EMI. Accordingly, the Court affirms the trial court's order.

### ORDER

AND NOW, this 8th day of March, 2007, the order of Court of Common Pleas of Berks County is affirmed.

---

**7.** The Board argues that EMI waived various arguments, primarily by arguing limited issues in its brief to the trial court. The Court determines that the issues discussed above have been properly preserved. In footnote 17 on p. 49 of its Brief for Appellant, EMI disputes any assertion by the Board that EMI conceded the validity of the sliding scale in Section 905.3(B), stating that it conceded only the validity of the sliding scale methodology under Pennsylvania law. The Hearing Officer expressly stated that EMI's opening brief to him acquiesced that the sliding scale in Section 905.3(B) was legally valid. EMI has not stated or argued an issue that the sliding scale is invalid, and any such contention is now waived.